ATTORNEY FOR APPELLANT
Kristin A. Mulholland
LeBlanc & Mulholland LLC
Crown Point, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

J.T. Whitehead
Kyle Hunter
Deputy Attorneys General



FILED
Feb 25 2016, 1:57 pm
CLERK
of the supreme court,
court of appeals and
tax court

## In the
## Indiana Supreme Court

No. 45S03-1509-CR-528

SIDNEY LAMOUR TYSON,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Lake County Superior Court, No. 45G01-1301-FD-11
The Honorable Salvador Vasquez, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 45A03-1405-CR-143

**February 25, 2016**

**Massa, Justice.**

Sidney Lamour Tyson is charged with failing to register as a sex offender in Indiana, the basis of that requirement being his obligation to register in Texas because of a delinquency adjudication. Tyson has moved to dismiss that charge, arguing he does not fit our statutory definition of a sex offender under Indiana Code section 11-8-8-5(b), and alternatively, his duty to

register upon moving to Indiana violates our Ex Post Facto Clause as applied to him since the definition was amended after he committed the underlying offense. Because Tyson is required to register in another state, we find he satisfies our statutory definition, and he must do so here. And, holding today that maintaining a registry requirement across state lines does not amount to a punitive burden, we see no ex post facto violation. We affirm.

**Facts and Procedural History**

In Texas in 2002, then-thirteen-year-old Sidney Tyson was adjudicated delinquent for aggravated sexual assault and indecency with a child, and he was required to register there as a sex offender until 2014. Although at the time of his offense, he would not have had to register in Indiana if he moved here, in 2006 our law changed: the legislature amended the Sex Offender Registry Act's definition of sex offender to include "a person who is required to register as a sex offender in any jurisdiction." 2006 Ind. Acts 2318. In 2009, Tyson moved to Indiana; a few years later a police officer pulled him over for driving with an expired plate and discovered Tyson was required to (and did) register as a sex offender in Texas but had not registered here.

The State charged Tyson with Class D felony failure to register as a sex offender. He moved to dismiss that charge, arguing that enforcing the registry requirement constituted an ex post facto violation since his offense occurred before the change to the definition of sex offender took effect. After a hearing, the trial court denied his motion.

Tyson filed an interlocutory appeal, and in a unanimous opinion, our Court of Appeals affirmed the trial court. Tyson v. State, 28 N.E.3d 1074, 1075 (Ind. Ct. App. 2015). The panel reasoned that the underlying purpose of our Ex Post Facto Clause is to ensure fair warning of what conduct will result in criminal procedures, and here, Tyson had sufficient warning: when he moved to Indiana, the amendment requiring his registration had been on the books for three years. Id. at 1076–77. Moreover, because he was already required to register in Texas until 2014, the

panel found he merely *remained* a sex offender upon relocation; he did not *become* one by operation of the amendment.  Id. at 1077.  Tyson sought transfer, arguing the relevant date for the ex post facto analysis is the commission of the offense, not relocation.

We granted Tyson's petition, thereby vacating the opinion below.  Tyson v. State, 37 N.E.3d 493 (Ind. 2015) (table); Ind. Appellate Rule 58(A).

## Standard of Review

Tyson's appeal arises from the denial of his motion to dismiss the criminal charge against him, which we generally review for an abuse of discretion.  Tiplick v. State, 43 N.E.3d 1259, 1262 (Ind. 2015).  But where, as here, the arguments presented are questions of law, we consider them de novo.  Study v. State, 24 N.E.3d 947, 950 (Ind.), cert. denied, 136 S. Ct. 412 (2015).  First, Tyson contends the plain meaning of the statutory definition of "sex or violent offender" does not include him; we review such matters of statutory interpretation without deferring to the resolution below.  Id.  Second, if Tyson does fit the statutory definition, he claims the registry requirement is an ex post facto violation as applied to him; likewise, we review questions of constitutionality afresh.  Zoeller v. Sweeney, 19 N.E.3d 749, 751 (Ind. 2014).  As the party challenging the statute, Tyson bears the burden of proof and all doubts are resolved against him.  Jensen v. State, 905 N.E.2d 384, 390 (Ind. 2009).  Unlike a facial challenge, however, he need only show the statute is unconstitutional "on the facts of [the] particular case."  Meredith v. Pence, 984 N.E.2d 1213, 1218 n.6 (Ind. 2013).

**Tyson Is a "Sex or Violent Offender" Pursuant to Our Statutory Definition.**

Indiana Code section 11-8-8-5 (Supp. 2015) defines "sex or violent offender" in two parts. Subsection (a) lists twenty sex crimes in our Indiana Code that, if convicted of any one of them, result in such a classification; subsection (b) adds, "the term includes":

> (1) a person who is required to register as a sex or violent offender in any jurisdiction; and
>
> (2) a child who has committed a delinquent act and who:
>
> > (A) is at least fourteen (14) years of age;
> >
> > (B) is on probation, is on parole, is discharged from a facility by the department of correction, is discharged from a secure private facility (as defined in IC 31-9-2-115), or is discharged from a juvenile detention facility as a result of an adjudication as a delinquent child for an act that would be an offense described in subsection (a) if committed by an adult; and
> >
> > (C) is found by a court by clear and convincing evidence to be likely to repeat an act that would be an offense described in subsection (a) if committed by an adult.

Tyson argues he does not fit within this framework because subsection (b)(2) restricts the definition. More specifically, Tyson contends the statute requires a sex offender be someone (1) who is required to register elsewhere *and* (2) who is a child that committed a delinquent act *and* (3) who is at least fourteen years old; "by simple statutory construction . . . with that conjunction 'and,' he has to be a child who is over the age of fourteen years." Oral Arg. Video at 2:20–54, 4:35–59. We disagree.

In construing a statute, we give unambiguous words their plain and ordinary meaning. State v. Am. Family Voices, Inc., 898 N.E.2d 293, 297 (Ind. 2008). We also examine the structure of the statute as a whole. City of Indianapolis v. Ingram, 176 Ind. App. 645, 657, 377 N.E.2d 877,

4

884 (1978); see also City of Carmel v. Steele, 865 N.E.2d 612, 618 (Ind. 2007); Russell v. Russell, 682 N.E.2d 513, 517 (Ind. 1997). Utilizing those canons, we find subsection (b) expands the definition of sex offender by adding that "the term includes" two classes of individuals, the first being persons required to register in another state under (b)(1) and the second being children adjudicated delinquent under (b)(2). The word "and" connecting (b)(1) and (b)(2) does not mean both conditions are required, but merely means both classes are "include[d]." With (b)(1) and (b)(2) as two independent bases for meeting the definition, we find the heightened protections laid out in (b)(2)(A), (b)(2)(B), and (b)(2)(C)—including the minimum age Tyson urges should protect him—apply only to the subsection in which they appear, (b)(2).

Moreover, we agree with the State that reading subsections (b)(1) and (b)(2)(A)–(C) together as one list of requirements would lead to an absurd result. Doing so would exclude all adult offenders who are required to register in another state because they fail Tyson's second element—being a child. And a child at least fourteen years old adjudicated delinquent for a sex offense with all of Indiana's statutory protections afforded to him or her would similarly be excluded for not meeting Tyson's first element—being required to register elsewhere. We decline to interpret the statute in a way that undermines its clear purpose "to protect the public." Wallace v. State, 905 N.E.2d 371, 383 (Ind. 2009); see also Cooper Indus., LLC v. City of S. Bend, 899 N.E.2d 1274, 1283 (Ind. 2009) ("We presume the legislature intended the language used in the statute to be applied logically, consistent with the statute's underlying policy and goals, and not in a manner that would bring about an unjust or absurd result."). Thus, an individual may be a "sex or violent offender" by satisfying either (b)(1) or (b)(2).

It is undisputed that, when Tyson was stopped by police in 2012, he was required to register as a sex offender in Texas. Tex. Code Crim. Proc. Ann. arts. 62.002(a) (West 2005); 62.101(c)(1) (West 2010). He was therefore a "sex or violent offender" pursuant to our statutory definition set forth in Indiana Code section 11-8-8-5(b)(1).

**The Statute Poses No Ex Post Facto Violation as Applied to Tyson.**

As a sex offender living in Indiana, our Sex Offender Registration Act mandated that Tyson register here for the duration of his Texas requirement.  Ind. Code § 11-8-8-7(a), -19(f).  Tyson asserts that, as applied to him, this obligation violates Indiana's prohibition against ex post facto laws because at the time he committed the underlying offense, our statutory definition had not yet been amended to include him.

Both the United States and Indiana Constitutions prohibit laws that impose punishment beyond what was prescribed at the time the act was committed.  Wallace, 905 N.E.2d at 377 (citing Weaver v. Graham, 450 U.S. 24, 28 (1981)).  The principle fundamental to this prohibition is that people have a right to fair warning of the criminal penalties that may result from their conduct.  Id.  Specifically, our Constitution provides, "No ex post facto law . . . shall ever be passed."  Ind. Const. art. 1, § 24.  And its federal counterpart similarly states, "No state shall . . . pass any . . . ex post facto law[.]"  U.S. Const. art. I, § 10.  Despite parallel language, we have recognized our State Constitution possesses a "unique vitality."  State v. Gerschoffer, 763 N.E.2d 960, 965 (Ind. 2002).  Thus, although federal authority may assist in our analysis, we may find our Indiana provision dictates a different outcome.  Wallace, 905 N.E.2d at 378.

Indeed, such has been the case in the sex offender registry context:  six years after the Supreme Court of the United States found Alaska's Sex Offender Registration Act was regulatory and therefore could be applied retroactively without offending the Federal Ex Post Facto Clause, Smith v. Doe, 538 U.S. 84, 105–06 (2003), we found our own Act[1] violated Indiana's Ex Post Facto Clause because it imposed a punitive burden as applied to an offender who committed his

---

[1] We did acknowledge that our Act and Alaska's were "very similar."  Wallace, 905 N.E.2d at 378.

crime—and even served his sentence—before *any* registration requirement existed. Wallace, 905 N.E.2d at 384.[2] But that same day, we found an amendment to that Act, which lengthened the mandatory registration period for sexually violent predators from ten years to life,[3] presented no ex post facto violation as applied to an offender who was already under a requirement to register. Jensen, 905 N.E.2d at 394. Two years later, we upheld a similar amendment enhancing an offender's present registration requirement. Lemmon v. Harris, 949 N.E.2d 803, 813 (Ind. 2011) ("Harris's claim fails for the same reasons Jensen's claim failed.").

In deciding all three cases, we adopted the Supreme Court's intent-effects test as the proper vehicle for analyzing whether the statute imposes a punishment—which cannot be done retroactively pursuant to our Ex Post Facto Clause—or whether the statute is merely part of a non-punitive, regulatory scheme. Wallace, 905 N.E.2d at 378 (citing Smith, 538 U.S. at 92); see

---

[2] Both before and after Smith v. Doe, state courts of last resort have overwhelmingly upheld their sex offender registry acts as regulatory regimes in the face of ex post facto challenges. E.g., State v. Noble, 829 P.2d 1217, 1224 (Ariz. 1992) (en banc); People v. Castellanos, 982 P.2d 211, 217–18 (Cal. 1999); People v. Adams, 581 N.E.2d 637, 641 (Ill. 1991); Hyatt v. Commonwealth, 72 S.W.3d 566, 572 (Ky. 2002); R.W. v. Sanders, 168 S.W.3d 65, 70 (Mo. 2005); State v. Mount, 2003 MT 275, ¶ 90, 317 Mont. 481, 497, 78 P.3d 829, 841; State v. Worm, 680 N.W.2d 151, 163 (Neb. 2004); Doe v. Poritz, 662 A.2d 367, 406 (N.J. 1995); State v. Burr, 598 N.W.2d 147, 158–59 (N.D. 1999); State v. Ward, 869 P.2d 1062, 1068–69 (Wash. 1994) (en banc). But see Doe v. State, 189 P.3d 999, 1019 (Alaska 2008); Doe v. Dep't of Pub. Safety & Corr. Servs., 62 A.3d 123, 143 (Md. 2013).

[3] Although the 2006 amendment at issue in Jensen did require sexually violent predators to register for life, it also provided an avenue for offenders to, after ten years, petition the court to "consider whether the person should no longer be considered a sexually violent predator." 905 N.E.2d at 394 (quoting Ind. Code § 35-38-1-7.5(g) (2014)). We found this opportunity for review to be significant in assessing whether the lengthened registration requirement constituted retroactive punishment. See Gonzalez v. State, 980 N.E.2d 312, 321 (Ind. 2013) (finding an ex post facto violation where offender's registration requirement was retroactively increased to life because of the victim's age and he could not request relief based on his rehabilitation).

also Jensen, 905 N.E.2d at 390; Harris, 949 N.E.2d at 810.  We find that same test drives our analysis today.

The first prong directs us to discern the legislature's intent.  Wallace, 905 N.E.2d at 379. Although we cannot turn to legislative history or an express purpose statement, we can examine where the legislature placed the challenged statute within the Code as probative evidence of its intent.  Jensen, 905 N.E.2d at 390; see also Smith, 538 U.S. at 94.  Both the amended statutory definition, Ind. Code § 11-8-8-5, and the corresponding mandate to register, Ind. Code § 11-8-8-7, appear in Title 11, concerning Corrections, not in Title 35, where we find our laws on criminal offenses, procedure, and sentencing.  Perhaps more importantly, we are aided by the principle that our statutes are presumed to be constitutional unless clearly overcome by a contrary showing. Jensen, 905 N.E.2d at 390.  Tyson has pointed to no evidence of punitive legislative intent behind the amended definition, and we see none.  We thus presume the legislature intended it to operate as part of a civil, and not criminal, regime.

The second prong of the intent-effects test asks us to assess the statute's practical effects. Wallace, 905 N.E.2d at 379.  For guidance, the Supreme Court of the United States and this Court have turned to the seven factors outlined in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168–69 (1963):

> [1] Whether the sanction involves an affirmative disability or restraint, [2] whether it has historically been regarded as a punishment, [3] whether it comes into play only on a finding of scienter, [4] whether its operation will promote the traditional aims of punishment—retribution and deterrence, [5] whether the behavior to which it applies is already a crime, [6] whether an alternative purpose to which it may rationally be connected is assignable for it, and [7] whether it appears excessive in relation to the alternative purpose assigned.

8

<u>Wallace</u>, 905 N.E.2d at 379. These factors, however, are neither exhaustive nor dispositive; they only provide a framework for the analysis. <u>Smith</u>, 538 U.S. at 97. Our task is to thoughtfully consider and weigh the factors, which we endeavor to do below.

First, we evaluate any affirmative disability or restraint imposed upon Tyson by operation of the amended statutory definition. As we've said before, the Act presents "significant affirmative obligations"—including registering with Corrections, disclosing personal information, allowing law enforcement visitation, and alerting authorities as to certain travel plans—as well as "a severe stigma" for every person to whom it applies. <u>Wallace</u>, 905 N.E.2d at 379–80. Here, however, Tyson was already under similar obligations in Texas and was subject to the same resulting stigma.[4] Nevertheless, we cannot overlook the fact that our Act does require he take an additional step, namely, that he notify Indiana's Department of Corrections of his presence so that he can perform those obligations *here*. And the resulting stigma could burden his move: while many Americans relocate to a new state to give themselves a fresh start, our Act makes that nearly impossible for sex offenders with an out-of-state registration requirement. Although the 2006 amendment largely maintained many of the restraints already imposed on Tyson, because he has to affirmatively alert another state's government and comply with its specific procedures for reporting, we find this factor leans toward finding its effects to be slightly punitive as applied to him.

Second, we determine whether the sanction has historically been considered punishment. In <u>Wallace</u>, we found the dissemination of the registrant's face accompanied with the "Sex Offender" label on a website resembled the historic punishment of shaming, and some of the Act's

---

[4] Although the specific duties under our Act and Texas's version may not be precisely the same, Tyson has presented no evidence—and we have no reason to conclude—that ours are any more burdensome.

reporting requirements were comparable to probation or parole, although we acknowledged other courts have disagreed. Id. at 380. Even in Jensen, where the offender was already included on the public registry, changing his label from "Sex Offender" to "Sex Predator" amounted to additional shaming that tipped this factor toward being punitive in effect. 905 N.E.2d at 392. Here, Tyson was subject to registry reporting requirements well before our definition of sex offender changed. And unlike Jensen, there is no evidence Tyson would be presented on Indiana's registry as anything more stigmatizing than what he would have endured in Texas. Still, the amendment does result in some increased shaming to which Tyson was not previously exposed: his face and offender label would appear on an additional website, accessed mostly by Indiana residents. Thus, a separate community—likely including Tyson's new neighbors and potential employers—would be put on notice of his past behavior.[5] While certainly not as egregious as Wallace or Jensen, this factor slightly favors finding a punitive burden as to Tyson.

Third, we consider scienter, which is customarily included in criminal statutes. Generally, if the sanction can result without showing mens rea, it is less likely to be considered punitive. Id. at 381. In both Wallace and Jensen, although acknowledging the Act lists a few strict liability crimes, we observed its application to the two offenders there was triggered by their convictions for crimes with the mens rea element. Wallace, 905 N.E.2d at 381, Jensen, 905 N.E.2d at 392. Here, however, the only prerequisite for registration is that Tyson "is required to register as a sex or violent offender in any jurisdiction." Ind. Code § 11-8-8-5(b)(1). Without a link to mens rea,

---

[5] Of course, Hoosiers—or anyone with Internet access for that matter—could already search for and find Tyson on Texas's website. See Texas Public Sex Offender Registry, Tex. Dep't of Pub. Safety, https://records.txdps.state.tx.us/SexOffender/ (last visited Feb. 24, 2016). In all practicality, however, we suspect very few people outside of Texas would utilize this feature and therefore afford this fact little weight.

10

this factor weighs in favor of finding regulatory effect, in that Indiana is choosing to defer to offender status determinations made by other states.

Fourth, we ask whether the resulting sanction promotes the traditional aims of punishment. In Indiana, those aims are to deter people from engaging in criminal acts and rehabilitate those that do. Ind. Const. art. 1, § 18 ("The penal code shall be founded on the principles of reformation, and not of vindictive justice."); Abercrombie v. State, 441 N.E.2d 442, 444 (Ind. 1982). Although the Act's mandate to register as a sex offender has a substantial deterrent effect, we have found "this is so whether applied to an offender who is required to register for ten years or an offender required to register for life. Essentially, as to this factor Jensen is in no different position now than he was before the Act was amended in 2006." Jensen, 905 N.E.2d at 393. The same is true here: requiring Tyson to register upon moving to Indiana, when he already had an existing obligation to register in Texas, has little deterrent or rehabilitative effect. Indeed, those aims were met upon Tyson's adjudication and initial registration, not upon Tyson's having to maintain that requirement across states. See Harris, 949 N.E.2d at 812 ("Here, the Act deters criminal conduct and promotes community condemnation of offenders—both of which are traditional aims of punishment—but it promoted these aims even when Harris committed his offense and pled guilty."). Therefore, this factor supports treating the effects of the amended definition as non-punitive.

Fifth, we consider whether the statute at issue applies only to criminal behavior. This factor favored treating the effects of the Act as punitive in Wallace, where we found "it is the determination of guilt of a sex offense, not merely the fact of the conduct and the potential for recidivism, that triggers obligations under the Act." 905 N.E.2d at 382. But we reached the opposite conclusion in Jensen and Harris, finding the challenged amendments did not apply to any criminal activity beyond that already giving rise to the offenders' initial registry requirement. Jensen, 905 N.E.2d at 393; Harris, 949 N.E.2d at 812 ("Like Jensen, Harris was required to register because his behavior was criminal even before the 2007 Amendment."). We find Tyson's circumstances are the same as those in Jensen and Harris because of his preexisting duty to register. Moreover, under the plain language of the amended definition Tyson challenges, his obligation to

11

register in the State of Indiana was not triggered by a guilty conviction; instead, it was triggered by the requirement he register in Texas. See Ind. Code § 11-8-8-5(b)(1) (defining a sex offender as "a person who is required to register as a sex or violent offender in any jurisdiction"). In other words, our statute defers to Texas's determination that its citizens should be aware of Tyson's status as a sex offender without looking at the underlying conduct, affording our own citizens that same protection. This factor thus weighs in favor of treating the amended definition's effects as non-punitive.

Sixth, we ask if the statutory scheme advances a legitimate and regulatory non-punitive interest. As we said in Wallace, "The answer is undoubtedly yes." Id. at 383. Given the frighteningly high risk of recidivism among sex offenders, the registration system is a measure to alert and protect the community. Id. And by requiring registration from individuals who are required to register elsewhere, Indiana avoids becoming a safe haven for offenders attempting to evade their obligation. We thus conclude this factor weighs heavily in favor of finding the effects of the amended statutory definition to be regulatory.

Finally, we turn to the seventh and most important factor: whether the resulting sanction is excessive in relation to its purpose. See Jensen, 905 N.E.2d at 394 (noting the final Mendoza-Martinez factor is afforded "considerable weight" in determining whether the statute is punitive in effect). As we have already observed, the 2006 amendment to the statutory definition of sex offender had little impact on Tyson. After his 2002 adjudication, he had to register as a sex offender in Texas until 2014; and after his 2009 move, he had to register as a sex offender in Indiana until 2014. Maintaining that obligation across state lines is far from excessive, especially relative to the significant public safety purpose our sex offender registry serves.

Taken as a whole, we find the effects of the amended definition of sex offender in Indiana Code section 11-8-8-5(b)(1), as applied to Tyson, are regulatory and non-punitive. This outcome makes sense in light of other as-applied ex post facto challenges to the Sex Offender Registration Act we've previously considered: unlike Wallace, where the offender had no obligation to register

12

anywhere before the Act was passed, Tyson was required to register in Texas *years* before our statutory definition was amended to include him. His circumstances are much more similar to those in <u>Jensen</u> and <u>Harris</u>, where both offenders already had to register; the challenged amendments merely lengthened that requirement. We simply cannot say that transferring the obligation upon moving is any more punitive than lengthening it to potentially last a lifetime.

Finding Tyson merely maintained his sex offender status across state lines, we conclude he has failed to show the amended definition retroactively punishes him in violation of our Constitution's prohibition against ex post facto laws.

### Conclusion

Tyson was statutorily obligated to register in Indiana until 2014. Seeing no statutory or constitutional impediment to enforcing that obligation as applied to him, we affirm the denial of Tyson's motion to dismiss the charge of failure to register as a sex offender.

Rush, C.J., and Dickson, Rucker, and David, JJ., concur.