MASSA, J.,
concurring in result with
separate opinion.
I agree with the holding of the Court today, that the loss of firearm privileges which accompanies a “crime of domestic violence” determination by a trial judge at sentencing does not violate Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348 (2000), and its progeny. I do not, however, concur in the Court’s rationale, because I believe it begins a slow march in the wrong direction.
We have previously confronted the loss of constitutional rights incident to a criminal conviction, and determined that such a loss is merely a “collateral consequence” of conviction, rather than a distinct criminal punishment. See, e.g., Snyder v. King, 958 N.E.2d 764, 785 (Ind.2011) (“[T]he General Assembly may exercise its police power to deprive all convicted prisoners of the right to vote for the duration of their incarceration .... The loss of political and civil rights upon conviction and imprisonment is simply a collateral consequence thereof.”); Williams v. State, 641 N.E.2d 44, 46 (Ind.Ct.App.1994) (“Collateral consequences attending a guilty plea in some circumstances ... may include the loss of civil service employment, of the right to vote and to travel freely abroad, of the right to a driver’s license, and of the right to possess firearms.” (internal citations omitted)). This is consistent with Supreme Court precedent, holding that the disenfranchisement of convicted felons (both during incarceration and after release) is not punitive, or otherwise violative of the Fourteenth Amendment. See Richardson v. Ramirez, 418 U.S. 24, 56, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1974) (holding that California could permissibly “exclude from the franchise convicted felons who have completed their sentences and paroles” under the Fourteenth Amendment); Trop v. Dulles, 356 U.S. 86, 96-97, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958) (“A person who commits a bank robbery ... loses his right to liberty and often his right to vote. If, in the exercise of the power to protect banks, both sanctions were imposed for the purpose of punishing bank robbers, the statutes authorizing both disabilities would be penal. But because the purpose of the latter statute is to designate a reasonable ground of eligibility for voting, this law is sustained as a nonpenal exercise of the power to regulate the franchise.”)
And what’s more, none of this body of precedent relied upon the federal test for whether a government restriction is “punitive” rather than “regulatory” under the United States Constitution. See Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S.Ct. 554. 168-69 (1963). Indeed, federal law holds that its virtually-identical firearm restriction — 18 U.S.C. § 922(g)(9) (2012)[12] — is not a criminal penalty, without relying on the seven-factor Mendoza-Martinez test. In Lewis v. United States, the Supreme Court considered a challenge to 18 U.S.CApp. § 1202(a)(1),[13] which prohibited a convicted felon from possessing a *228 firearm. 445 U.S. 55, 57-58, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980). Lewis pled guilty of felony breaking and entering in 1961, was subsequently charged with violating § 1202(a)(1), and defended on the grounds that the original conviction was invalid. Id. The Supreme Court affirmed the charge, using the following rationale:
Congress’ judgment that a convicted felon, even one whose conviction was allegedly uncounseled, is among the class of persons who should be disabled from dealing in or possessing firearms because of potential dangerousness is rational. Enforcement of that essentially civil disability through a criminal sanction does not support guilt or enhance punishment, on the basis of a conviction that is unreliable when one considers Congress’ broad purpose.
Id. at 67, 100 S.Ct. 915 (emphasis added) (internal quotations omitted).[14] More recently, the Ninth Circuit found that the holding in Lewis applies with equal force to 18 U.S.C. § 922(g)(9), finding that it too is a “civil disability.” United States v. First, 731 F.3d 998, 1008-09 (9th Cir.2013), cert. denied, — U.S. —, 135 S.Ct. 50, 190 L.Ed.2d 54 (2014). And like Lems, the Ninth Circuit in First did not resort to the Mendoza-Martinez test to reach this outcome.
I therefore believe that applying the Mendoza-Martinez test to this Apprendi-based constitutional challenge injects unnecessary ambiguity into the court’s decision-making process at sentencing. Criminal conviction in Indiana carries with it a number of “collateral consequences” not directly related to the criminal sentence, including, but not limited to:
• Disenfranchisement for the term of incarceration, Ind.Code § 3-7-13-4 (2005);
• Ineligibility for jury service during the term of disenfranchisement, Ind.Code § 33-28-5-18(b)(5) (2008);
• The requirement to provide both fingerprints, Ind.Code § 35-38-1-28 (2014), and DNA samples to the State, Ind.Code § 10-13-6-10 (2010); Ind. Code § 35-38-1-27 (2014);
• A court order prohibiting contact with an individual, Ind.Code § 35-38-1-30 (2014);
• Seizure of monies earned while incarcerated as a result of the criminal conduct, Ind.Code § 5-2-6.3-3 (2010);
• Depending on the crime, registration as a credit restricted felon, Ind.Code § 35-38-1-7.8 (2014), or a habitual offender, Ind.Code § 35-38-1-32 (2014), loss of driver’s license, Ind.Code § 35-48-4-15 (2014), and mandatory HIV testing, which if positive is disclosed to the defendant’s victims, Ind. Code § 35-38-1-10.5, -10.6 (2014);
• For certain gambling-related offenses, lifetime prohibitions on running or even entering a gambling establishment, Ind.Code § 4-33-10-4 (2012); Ind.Code § 4-35-6.5-3 (2012); and
• Eligibility for certain rehabilitative government assistance programs, such as Temporary Assistance for Needy Families funding, Ind.Code § 12-14-28-3.3 (2012), and substance abuse clinics. Ind.Code § 5-2-11-0.5, -5 (2010).
All of these consequences involve at least a minimal finding of fact by the sentencing court, some of which may not have been found by the jury beyond a reason *229 able doubt. Moreover, several of these restrictions implicate constitutional rights, such as the right to vote, the right to serve on a jury, privacy rights, freedom of association and freedom to travel. I do not believe that each and every one of these consequences need be subjected to the Mendoza-Martinez test in future litigation asserting a Blakely/Apprendi claim. Rather, this Court should endeavor to keep that Pandora’s Box closed,[15] and continue to entrust our trial courts to operate with appropriate discretion at sentencing in ordering such “collateral consequences” be applied.
For the foregoing reasons, I concur in today’s result, affirming the trial court’s “crime of domestic violence” determination under Indiana Code section 35-38-1-7.7.
DICKSON, J., joins.

. This federal counterpart reads: "It shall be unlawful for any person ... who has been convicted in any court of a misdemeanor crime of domestic violence, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition....”

. The specific statute in Lewis, codified in the Appendix to Title 18 as part of the Omnibus Crime Control and Safe Streets Act of 1968, was repealed in 1986/ See Pub.L. 99-308, § 104(b), 100 Stat. 459. "The substance of this provision is now contained in § 922(g)(1).” United States v. Bena, 664 F.3d 1180, 1186 (8th Cir.2011).

. We first adopted the federal intent-effects test in Wallace v. State, where we held that Indiana's sex offender registration requirement constituted a criminal punishment, and thus could not be imposed on Wallace under the Ex Post Facto Clause of the Indiana Constitution, since he had already committed his crime and even completed his Indiana sentence before the law was enacted. 905 N.E.2d 371, 379-84 (Ind.2009). And we did this despite acknowledging that the United States Supreme Court had found a similar registration requirement non-punitive-applying this same test under the Ex Post Facto Clause of the United States Constitution. Id. at 378 (citing Smith v. Doe, 538 U.S. 84, 105-06, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003)). This outcome makes Indiana an outlier, as the vast majority of our sister state courts which have addressed the issue have found their sex offender registration requirements to be non-punitive, in line with Smith. See Tyson v. State, 51 N.E.3d 88 n.2, 2016 WL 756366, at n. 2 (Ind. Feb. 25, 2016) (noting at least ten states which have upheld sex offender registry requirements as non-punitive). And to further complicate matters, on the same day this Court handed down Wallace, it also handed down Jensen v. State, where a plurality reached the opposite outcome and found application of sex offender registry requirements to Jensen did not offend the Indiana Constitution. 905 N.E.2d 384 (Ind.2009).
Because Wallace and Jensen made it abundantly clear that sex offender registry requirements must be tested on a case-by-case as-applied basis, they have invited an endless string of appeals from sex offenders who want to avoid telling their neighbors that they live next door, with varying results. See, e.g., Tyson, 51 N.E.3d 88, 2016 WL 756366 (non-punitive); State v. Zerbe, 50 N.E.3d 368 (Ind.2016) (non-punitive); Gonzalez v. State, 980 N.E.2d 312 (Ind.2013) (punitive); Lemmon v. Harris, 949 N.E.2d 803 (Ind.2011) (non-punitive); Hevner v. State, 919 N.E.2d 109 (Ind.2010) (punitive); State v. Pollard, 908 N.E.2d 1145 (Ind.2009) (punitive). And we have declined to review many more such decisions by our Court of Appeals. See, e.g., Seales v. State, 4 N.E.3d 821 (Ind.Ct.App.) (non-punitive), trans. denied, 9 N.E.3d 170 (Ind.2014); State v. Hough, 978 N.E.2d 505 (Ind.Ct.App.2012) (punitive), trans. denied, 985 N.E.2d 339 (Ind.2013); Andrews v. State, 978 N.E.2d 494 (Ind.Ct.App.2012) (punitive), trans. denied, 985 N.E.2d 339 (Ind.2013); Burton v. State, 977 N.E.2d 1004 (Ind.Ct.App.2012) (punitive), trans. denied, 985 N.E.2d 339 (Ind. 2013), abrogated by Zerbe, 50 N.E.3d 368; Healey v. State, 969 N.E.2d 607 (Ind.Ct.App.) (non-punitive), trans. denied, 974 N.E.2d 475 (Ind.2012). Parsing through these seven factors has proven to effectively grant us near total discretion to follow our gut instinct as to whether a restriction ''feels” like punishment.
But having said that, although a majority of this Court has recently taken a more casual attitude toward stare decisis, see Myers v. Crouse-Hinds Div. of Cooper Indus., Inc., 53 N.E.3d 1160, 2016 WL 825111 (Ind. Mar. 2, 2016), the doctrine nonetheless compels continued application of the intent-effects test in sex offender registry appeals. I would prefer, however, that we not get tangled in the same briar patch when reviewing a host of other consequences collateral to conviction.

. The Lewis majority then referred to § 1202(a)(1) as "a civil firearms disability,” and even noted in dicta that its reasoning should apply to 18 U.S.C. § 922 as well. See Lewis, 445 U.S. at 63-64, 67, 100 S.Ct. 915.