# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 07 2018, 9:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Derek Wayne Levi, <br> *Appellant-Defendant*, <br><br> v. <br><br> State of Indiana <br> *Appellee-Plaintiff*. | December 7, 2018 <br><br> Court of Appeals Case No. <br> 18A-CR-755 <br><br> Appeal from the Vanderburgh <br> Circuit Court <br><br> The Honorable Michael J. Cox, <br> Magistrate <br><br> Trial Court Cause No. <br> 82C01-1709-F5-5671 |

**Brown, Judge.**

[1]  Derek Wayne Levi appeals his conviction for failure to register as a sex offender as a level 5 felony.  Levi raises three issues which we revise and restate as:

    I.     Whether the trial court erred in denying his motion to dismiss;

    II.    Whether the trial court abused its discretion in instructing the jury; and

    III.   Whether the evidence is sufficient to sustain Levi's conviction.

We affirm.

### Facts and Procedural History

[2]  On April 12, 2001, Levi was convicted of sexual misconduct with a minor.  At that time, Ind. Code § 5-2-12-13 provided:

> (a) Except as provided in subsection (b), an offender's duty to register expires ten (10) years after the date the offender is released from prison or any other facility operated by the department of correction, placed on parole, or placed on probation, whichever occurs last.

> (b) An offender who is found to be a sexually violent predator by a court under IC 35-38-1-7.5(b) is required to register for an indefinite period unless a court, assisted by a board of experts, finds that the offender is no longer a sexually violent predator under IC 35-38-1-7.5(c).

(Subsequently amended by Pub. L. No. 238-2001, § 13 (eff. July 1, 2001); Pub. L. No. 116-2002, § 16 (eff. July 1, 2002); and Pub. L. No. 222-2003, § 1 (eff. July 1, 2003); repealed by Pub. L. No. 140-2006, § 41 (eff. July 1, 2006); and Pub. L. No. 173-2006, § 55 (eff. July 1, 2006)).

[3] Levi was incarcerated for his 2001 offense for a period of approximately six years and was released sometime in 2006.

[4] In 2006, Ind. Code § 5-2-12-13 was repealed and recodified at Ind. Code § 11-8-8-19. The General Assembly amended Ind. Code § 11-8-8-19, effective July 1, 2008, to provide that "[t]he registration period is tolled during any period that the sex or violent offender is incarcerated. The registration period does not restart if the offender is convicted of a subsequent offense; however, if the subsequent offense is a sex or violent offense, a new registration period may be imposed in accordance with this chapter." *See* Pub. L. No. 119-2008, § 8 (eff. July 1, 2008).[1]

[5] Since 2006, Levi was incarcerated for other offenses for approximately six years. On August 28, 2017, Levi was released. A Sex or Violent Offender Registration Form dated August 28, 2017, listed Levi's address as 1817 N. Fares Avenue, an address corresponding to that of the Esquire Inn in Evansville, Indiana; the registration start date as December 18, 2006; and the registration end date as June 26, 2023. Levi's handwritten initials appear on the form and attest to the information.

[6] On August 30, 2017, Levi met with Christina Skie, his parole officer. On September 4, 2017, Levi checked out of the Esquire Inn, and Priti Grigorian,

---

[1] Ind. Code § 11-8-8-19 was subsequently amended by Pub. L. No. 114-2012, § 26 (eff. July 1, 2012); Pub. L. No. 214-2013, § 12 (eff. July 1, 2013); Pub. L. No. 158-2013, § 176 (eff. July 1, 2014); Pub. L. No. 168-2014, § 23 (eff. July 1, 2014); and Pub. L. No. 5-2015, § 33 (eff. April 15, 2015).

the manager at the Esquire Inn, told him to call his parole officer. On September 6, 2017, Skie had an appointment with Levi at his residence, but Levi appeared at her office early that morning. Levi told Skie that the assistance to pay for his room ended, that he was staying with a friend at that time, and that he would call her by the end of the day with the new address because he did not know it. Skie told Levi that he needed to register and notified Vanderburgh County Sheriff's Detective Mike Robinson that Levi was no longer staying at the motel. That same day, Levi filled out a Sex or Violent Offender Registration Form again listing the address of the Esquire Inn. Levi did not call Skie that day but called her on September 9, 2017, and told her that his address was 1021 Edgar Street. On September 11, 2017, Skie saw Levi and reminded him again that he needed to register.

[7] On September 13, 2017, the State charged Levi with failure to register as a sex or violent offender as a level 5 felony. The State alleged an enhanced charge of a level 5 felony based on the allegation that Levi was convicted and sentenced on April 7, 2016, in the Vanderburgh Superior Court under cause number 82C01-1510-F5-6356 for a violation of failure to register as a sex offender.

[8] On December 14, 2017, Levi filed a motion to dismiss asserting that he was convicted of an offense that required him to register for a term of ten years, that ten years had elapsed since his release, and that he had no further obligation to register. On December 18, 2017, the State filed an objection to Levi's motion to dismiss. On January 10, 2018, the court held a hearing, and on January 29, 2018, it denied the motion.

[9] On February 1, 2018, the court held a jury trial. Outside the presence of the prospective jurors, the prosecutor stated she had filed a motion in limine and that it was not appropriate for Levi to argue in front of the jury that the law requiring him to register no longer applied to him. Levi's counsel indicated that Levi was no longer required to register and, when asked how he was going to "get that into evidence," answered that he was going to ask the "various individuals what the law was at the time of his plea and when he began to register and . . . whether or not 10 years had elapsed since then . . . ." Transcript Volume III at 7. The court denied the State's motion in limine.

[10] During his opening statement, Levi's counsel stated:

> It's going to be encumberant [sic] for you to find out which set of law, which set of rules that we're playing by. If you use from 2006, late 2006, early 2007, ten years from that date, [Levi] no longer has to register under Indiana code 11-88 [sic], which is the statutory scheme, they will try to say that the change of the law extends that time out for other reasons.

*Id.* at 101. He also stated: "[O]ur contention is, and we will be arguing at the end, that September 6, 2017, or September 7, 2017, the date upon which they allege he violated the law was subsequent to the 10 years, that he no longer had an obligation, was not a proper person under the statutory scheme when he was first convicted in 2001 to have to register." *Id.* at 101-102.

[11] Skie testified that the Department of Correction ("DOC") determines the end date of a person's registration time period. During cross-examination, Levi's counsel showed Skie a printout of the "2008 Senate and Act of Bill." *Id.* at 118.

When asked if she would agree with the characterization that "it's not 10 years necessarily any more, but in 2008 they changed that law," Skie answered: "I guess I agree with that." *Id.* at 119. She testified that the DOC calculated a registration end date of June 6, 2023, based upon the days that Levi was not incarcerated and that he had subsequent incarceration of approximately six years. On redirect examination, Skie testified that Levi's registration period was scheduled to end in 2023 when he was released in August 2017 and that Levi had been incarcerated for six to seven years in his original ten-year registration period.

[12] Detective Robinson testified that he received the Sex or Violent Offender Registration Form from the DOC. When asked if he knew approximately how many times Levi had been incarcerated since his release in 2006, Detective Robinson answered: "I can count confidently just with my dealings with him it had been three times that I know of for registry violations off just firsthand knowledge." *Id.* at 171. Levi's counsel objected, stated that he thought "we weren't going to the reasons for that, only that he was incarcerated, the number, not the type," and moved for a mistrial. *Id.* After some discussion, the court overruled Levi's motion and offered to give an admonition, but Levi's counsel indicated that he did not want to "bring specific attention to it." *Id.* at 175.

[13] On cross-examination, Levi's counsel questioned Detective Robinson about the law at the time Levi committed his offense in 2001 and the amendments. Levi's counsel also showed Detective Robinson a printout of the Senate Bill from 2008 and questioned him regarding the amendment. Detective Robinson

indicated that the decision on tolling was done by the DOC and was based on the 2008 amendment.

[14] During the beginning of a discussion regarding the final jury instructions, the court stated that it had heard argument on the instructions in chambers. Levi's counsel proposed a jury instruction detailing the length of time registration was required under the law that existed prior to July 1, 2008. The court granted Levi's proposed instruction and gave the instruction as Final Instruction No. 3. The court included one of the State's proposed instructions as Final Instruction No. 4 which provides in part: "The statute defining when a person is required to register as a sex or violent offender, after July 1, 2008, reads in part as follows . . . . The registration period is tolled during any period that the sex or violent offender is incarcerated. . . . ." Appellant's Appendix Volume II at 79.

[15] The court and the parties also discussed Final Instruction No. 5, which states:

> The court decided that the law after July 1, 2008 applies in this case. Nevertheless, the defense may argue that the defendant is not a proper person required to register because you are the finder of both the law and the facts.

*Id.* at 80. Levi's counsel objected and argued:

> [T]he instructions that were tendered by the State and the defense are in fact the law as they exists [sic] or pattern jury instructions, the Court has taken it upon itself to introduce what is labeled as instruction 5 which I believe invades the province of the jury to some extent, I think it also draws specific attention to a hearing held outside the presence of the jury back on January 10th and ultimately decided on January 29th which is the Motion to

Dismiss.  Again, as stated earlier, the Motion to Dismiss is silent as to the rationale why, but nonetheless it was decided in that way.  The Court I think by bringing this to their attention invades the province of the jury, it is not a pattern jury instruction that's been reviewed and authorized by judicial committee, and believe that it's prejudicial to my client.

Transcript Volume III at 220.  The prosecutor stated:

[I]t's an accurate statement in the State's opinion, it's been the State's position that we essentially relitigated the Motion to Dismiss throughout the trial and I think it's important for the jury to know that the Court has made a decision previously on that, it's just as if we had had a Motion to Suppress, we had a hearing outside the presence of the jury, and the Court ruled that the evidence is admissible and what defense has done is essentially relitigated the Motion to Suppress in that scenario in front of the jury and that's generally not allowed and the Court has made a legal determination as is the Court's job and duty and the Court has done that twice now that the law as it stood in 2008 applies to the defendant, so the Court has given defense significantly way [sic] in relitigating the Motion to Dismiss and I think it's only fair and appropriate that the jury understand what's happening and what the Court has done and what the Court has allowed.

*Id.* at 220-221.  The court stated:

The Court has given the defense significant leeway in this case to argue something that it ordinarily would not, that the Court believes that the determination of law, the Court's determination of the law is final but nevertheless the defense has been vehement in its position that they would have the right since the jury is, determines both the law and the facts, to have the opportunity to make that argument and the Court has allowed the defense to

examine the State's witnesses with regard to what the law was prior to July 1 of 2008 and of course what the law was after July 1 of 2008, so the Court believes in order to not confuse the jury the Court's instruction number 5 was appropriate.

*Id.* at 222-223. The court also noted that Final Instruction No. 5 was "not in its original form, the Court did incorporate two of the defendant's request[s] for changes made to that instruction, even though the defendant still objected to it."[2] *Id.* at 223. The court read the instructions to the jury.

[16] The jury found Levi guilty of failure to register as a level 6 felony. Levi pled guilty to the enhancement to a level 5 felony. On March 2, 2018, the court sentenced Levi to five years in the DOC.

## *Discussion*

### I.

[17] The first issue is whether the trial court erred in denying Levi's motion to dismiss. Levi argues that the registration period was not tolled pursuant to the 2008 amendment to Ind. Code § 11-8-8-19 during his periods of incarceration and the 2008 law constitutes an ex post facto law as applied to him. The State argues that the conduct triggering the application of the 2008 amendment occurred in 2010, 2012, 2014, and 2016, there is no retroactivity in play, and the

---

[2] The record does not indicate what changes were made to Final Instruction No. 5.

relevant portions of the sex offender registration act are not a violation of the ex post facto clause.[3]

[18] We generally review the denial of a motion to dismiss for an abuse of discretion. *Tyson v. State*, 51 N.E.3d 88, 90 (Ind. 2016). However, where the arguments present questions of law, we consider them de novo. *Id.*

[19] The Indiana Constitution provides that "[n]o ex post facto law . . . shall ever be passed." IND. CONST. art. 1, § 24. This provision prohibits the passage of any law which imposes a punishment for an act which was not punishable at the time it was committed or imposes additional punishment to that then prescribed. *Gonzalez v. State*, 980 N.E.2d 312, 316 (Ind. 2013).

[20] "[W]e are aided by the principle that every statute stands before us clothed with the presumption of constitutionality until that presumption is clearly overcome by a contrary showing." *Jensen v. State*, 905 N.E.2d 384, 390 (Ind. 2009). "The party challenging the constitutionality of the statute bears the burden of proof, and all doubts are resolved against that party." *Id.*; *see also Tyson*, 51 N.E.3d at 90-91. "If two reasonable interpretations of a statute are available, one of which is constitutional and the other not, we will choose that path which permits upholding the statute because we will not presume that the legislature violated the constitution unless the unambiguous language of the statute

---

[3] The State cites an Indiana Offender Database Search which reveals that Levi was sentenced for failure to register as a sex offender in 2010, 2012, 2014, and 2016.

requires that conclusion." *Jensen*, 905 N.E.2d at 390-391 (quoting *State Bd. of Tax Comm'rs v. Town of St. John*, 702 N.E.2d 1034, 1037 (Ind. 1998)).

[21]     We find *Bridges v. State* in which this Court addressed a similar argument instructive. In that case, we held:

> Bridges contends that the 2008 amendments' tolling provision was applied to him retroactively and therefore violated our state's prohibition against ex post facto laws. But Bridges committed his subsequent offenses in 2010, 2011, and 2013, years after the 2008 amendments became effective. Thus, no retroactive application took place, and without retroactive application, there can be no ex post facto violation. Indeed, this statute does not necessarily apply to all people who have already committed sex offenses—rather, the statute's plain language makes clear that it applies only to people who, after having committed a sex offense, subsequently commit an additional offense that leads to a new sentence of incarceration. Bridges's registration was tolled not because of his 2002 child molestation conviction, but because, after his release in 2006 and after the 2008 amendments became effective, he committed and was convicted of and sentenced for new offenses. And because Bridges committed his subsequent offenses years after the 2008 amendments became effective, he had fair notice and warning that he would be subjected to the tolling provision for his registration if he became incarcerated after 2008.

109 N.E.3d 453, 456 (Ind. Ct. App. 2018). We held that we were compelled to find that tolling Bridge's registration did not change the legal consequences of the acts that he completed before the 2008 amendments became effective because the statute that contains the tolling provision was clear and unambiguous on its face. *Id.* We concluded that tolling Bridge's registration on

the sex offender register did not violate our state's prohibition against ex post facto laws. *Id.*

[22] The record reveals that Levi was convicted of sexual misconduct with a minor in April 2001 and was released sometime in 2006. Under Ind. Code § 5-2-12-13 in effect at the time of his original offense, he was required to register for ten years after his release from prison. Levi had a subsequent incarceration of approximately six years following his release in 2006. He asserts that the only relevant date is the date of his original predicate sex offense and does not discuss the timing of his subsequent offenses which resulted in his incarceration after the 2008 amendment. We conclude that Levi has not carried his burden of demonstrating that as applied to him the statute violates the Indiana constitutional prohibition against ex post facto laws.

II.

[23] The next issue is whether the trial court abused its discretion in instructing the jury. Generally, "[t]he purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." *Overstreet v. State*, 783 N.E.2d 1140, 1163 (Ind. 2003), *cert. denied*, 540 U.S. 1150, 124 S. Ct. 1145 (2004). Instruction of the jury is generally within the discretion of the trial court and is reviewed only for an abuse of that discretion. *Id.* at 1163-1164. To constitute an abuse of discretion, the instruction given must be erroneous, and the instructions taken as a whole must misstate the law or

otherwise mislead the jury. *Benefiel v. State*, 716 N.E.2d 906, 914 (Ind. 1999), *reh'g denied*, *cert. denied*, 531 U.S. 830, 121 S. Ct. 83 (2000).

[24] Before a defendant is entitled to a reversal, he must affirmatively show that the erroneous instruction prejudiced his substantial rights. *Lee v. State*, 964 N.E.2d 859, 862 (Ind. Ct. App. 2012) (citing *Gantt v. State*, 825 N.E.2d 874, 877 (Ind. Ct. App. 2005)), *trans. denied*. An error is to be disregarded as harmless unless it affects the substantial rights of a party. *Id.* (citing *Oatts v. State*, 899 N.E.2d 714, 727 (Ind. Ct. App. 2009); Ind. Trial Rule 61).

[25] Levi argues that Final Instruction No. 5 bound the conscience of the jury. He asserts that the most obvious interpretation of the trial court's use of the term "applies" is that the registration requirement applies to Levi but "it was solely the jury's prerogative to determine . . . whether the registration requirement no longer applied because the ten year period had already expired." Appellant's Brief at 32-33. He contends that the "trial court's imprimatur for a finding of guilt in this case by expressing its order that the registration law 'appl[ied]' to Levi was a powerful force that a jury would not likely disregard lightly." *Id.* at 33. The State argues that the instruction is not misleading and "reminds the jury that it was free to side not only with the defense, generally speaking, but with this particular defense to this particular charge, and in this particular case." Appellee's Brief at 28-29.

[26] Preliminary Instruction No. 7 and Final Instruction No. 10 state: "Under the Constitution of Indiana, you have the right to determine both the law and the

facts. My instructions are your best source in determining the law."
Appellant's Appendix Volume II at 64, 85. Preliminary Instruction No. 10
states in part: "Nothing I say or do is intended to suggest what you should
believe about the facts in this case, or what your verdict should be. Each of
you, as jurors, must determine the facts and the verdict." *Id.* at 66. Final
Instruction No. 5 states:

> The court decided that the law after July 1, 2008 applies in this
> case. Nevertheless, the defense may argue that the defendant is
> not a proper person required to register because you are the
> finder of both the law and the facts.

*Id.* at 80.

[27] In light of the instructions indicating that the jurors determine the law, the
questioning of the witnesses by Levi's counsel with respect to the 2008
amendment, the nature of the issue, and the court's inclusion of Final
Instruction No. 3 detailing the law prior to the 2008 amendment at Levi's
request, we cannot say that the trial court abused its discretion in giving Final
Instruction No. 5.

## III.

[28] The next issue is whether the evidence is sufficient to sustain Levi's conviction.
When reviewing claims of insufficiency of the evidence, we do not reweigh the
evidence or judge the credibility of witnesses. *Jordan v. State*, 656 N.E.2d 816,
817 (Ind. 1995), *reh'g denied*. We look to the evidence and the reasonable

inferences therefrom that support the verdict. *Id.* The conviction will be affirmed if there exists evidence of probative value from which a reasonable jury could find the defendant guilty beyond a reasonable doubt. *Id.*

[29] Levi stipulated at trial that he was convicted of sexual misconduct with a minor on or about April 12, 2001, and that the conviction carried a ten-year registration. On appeal, he argues that there was not sufficient evidence that he was required to register and that the only evidence from which to infer how long he was subsequently incarcerated was the registration end date on his sex offender registration form which listed June 26, 2023. He asserts that the State presented no evidence or testimony that he was incarcerated for six years following his release for the predicate offense of sexual misconduct with a minor.

[30] The record contains the Sex or Violent Offender Registration Form which lists: "**Registration End Date: 06/26/2023." State's Exhibit 2 at 2. Levi's handwritten initials appear on this document after the following statement: "I attest that the information listed above is accurate and complete. I acknowledge that the double asterisk (**) designates the information that will be published on the Indiana sex and violent offender web site." *Id.* We note that Skie, Levi's parole officer, indicated that the registration end date was based on the days that Levi was not incarcerated and that Levi had subsequent incarceration of approximately six years. On redirect examination, Skie indicated that Levi had been incarcerated for six or seven years during his

original ten-year registration period and that he went to the DOC three or four times when he was released to parole for the sexual misconduct conviction.

[31] Based upon our review of the record, we conclude that the State presented evidence of a probative nature from which a trier of fact could find beyond a reasonable doubt that Levi committed the offense of failure to register as a sex offender.

## Conclusion

[32] For the foregoing reasons, we affirm Levi's conviction.

[33] Affirmed.

Altice, J., and Tavitas, J., concur.