

**FILED**

Jun 30 2015, 7:15 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Timothy P. Broden
Lafayette, Indiana

ATTORNEY FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Lawrence J. Anderson, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | June 30, 2015 <br><br> Court of Appeals Case No. <br> 79A02-1501-CR-10 <br><br> Appeal from the Tippecanoe Superior Court No. 2 <br><br> The Honorable Thomas H. Busch, Judge <br><br> Case No. 79D02-1402-FA-09 |

**Vaidik, Chief Judge.**

# Case Summary

[1] The Indiana Supreme Court has held that walking through an open door does not satisfy the "breaking" element of burglary—but opening an unlocked door does. In this case, the defendant "rushed" a victim to gain unauthorized entry into a dwelling when the door was voluntarily opened for another person whom

the victim was expecting. We find that "rushing" someone to gain unauthorized entry is sufficient evidence of force used. Thus, we affirm the defendant's conviction for Class A felony burglary.

## Facts and Procedural History

[2] Alexis Daniels owed her neighbor Cortez Collins $1000.00 for drugs she had purchased from him. Collins asked Alexis if she knew anyone who sold drugs in the Lafayette area so that he could obtain the money she owed him. Alexis informed Collins that Timothy Mounts sold spice. Collins told Alexis to go to Mounts' apartment to buy spice and see if he kept any guns there. When Alexis returned from buying the spice, Collins had her draw a floorplan of Mounts' apartment. Collins later returned to Alexis's apartment and told Alexis that they were going to rob Mounts. The plan was for Lawrence Anderson, Alexis, Collins, and Jaaz Jones to go to Mounts' apartment, wait for him to open the door for Alexis, and then enter the apartment to rob him. At Collins' request, Alexis initiated another buy from Mounts for a larger quantity of spice.

[3] After Alexis texted Mounts that she was on her way, Mounts briefly left the apartment to get food for his pregnant girlfriend—Jessica Wise—who lived with him. As Alexis approached the door of Mounts' apartment, Anderson and the two other men hid around the corner of the apartment; all were dressed in black and two had their faces covered with pantyhose while the third one had a sock hat over his head. When Alexis knocked on the door, Jessica answered. Because Jessica expected Alexis, she opened the door, turned, and started

walking toward the couch. As Alexis "stepped inside [the apartment] and to the side . . . [the men] bombarded themselves inside." Tr. Vol. 1 p. 67. Alexis "got shoved" as the men made their way into the apartment, and Jessica was "rushed." *Id*. at 21-22, 78. Jessica was pushed on the couch by one of the men—later identified as Anderson—who began to choke and hit her. *Id*. at 22-23, 78. When Jessica asked Anderson to stop hitting her because she was pregnant, he responded "Bit** I don't give a fu** what you are." *Id*. at 24. After Anderson stopped hitting her, he dragged her off the couch by her hair through the living room to the safes in the bedroom where he hit her in the back of the head repeatedly with a gun as she tried to open one of the safes. *Id*. at 30. The men eventually left with one safe and a PlayStation 3.

[4] The State charged Anderson with seven counts in connection with this incident: Count I: Class A felony conspiracy to commit burglary, Count II: Class A felony burglary, Count III: Class B felony conspiracy to commit robbery while armed with a deadly weapon, Count IV: Class B felony robbery, Count V: Class D felony theft, Count VI: Class C felony battery, and Count VII: Class C felony battery. A jury found Anderson guilty on all counts. The trial court entered judgment of conviction for Counts II, IV, and VII only and merged the other counts due to double-jeopardy concerns. Tr. Vol. 2 p. 17; Appellant's App. p. 15.

[5] Before sentencing, Anderson filed a motion to correct errors contending that there was insufficient evidence to support his Class A felony burglary conviction. Appellant's App. p. 37. Specifically, Anderson argued there was

no evidence "of a movement of a structural impediment that could be considered 'breaking.'" *Id*. The court denied Anderson's motion, finding "that entering the apartment without permission and by force, as occurred here, is sufficient to constitute a breaking, whether or not the door was moved in doing so." *Id*. at 29-30. The court reasoned that "the doorway itself was a structural impediment designed to prohibit unauthorized entry, the door was opened by subterfuge, and by forcibly crossing the threshold the defendant satisfied the requirement of breaking." *Id*. at 30. Following the sentencing hearing, the trial court sentenced Anderson to thirty years for Count II: Class A felony burglary, twenty years for Count IV: Class B felony robbery, and eight years for Count VII: Class C felony battery. The court ordered the sentences to be served concurrently with five years suspended to probation. *Id*. at 15-20.

[6] Anderson now appeals his burglary conviction only.

# Discussion and Decision

[7] Anderson contends that the evidence is insufficient to support his conviction for burglary. On a challenge to the sufficiency of evidence to support a conviction, a reviewing court does not reweigh the evidence or judge the credibility of the witnesses. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). This Court respects the jury's exclusive province to weigh conflicting evidence. *Id*. It considers only the evidence most favorable to the verdict. *Id*. This Court must affirm if the evidence and reasonable inferences drawn from the evidence could

have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id*.

[8] Anderson argues that there was no evidence of physical movement of a structural impediment that could be considered a "breaking" within the statutory definition for the crime of burglary. Appellant's Br. p. 4. The State responds that in order to establish that a breaking has occurred, it needs only to introduce "evidence from which the trier of fact could reasonably infer that the slightest force was used to gain unauthorized entry." Appellee's Br. p. 7 (quotation omitted). The State relies on the fact that Anderson and the other men "rushed" Jessica after coming through the open door, and argues that by running forcefully at Jessica, they used force to push their way into the apartment. *Id*. at 7-8. We agree.

[9] At the time of the crime, Indiana Code section 35-43-2-1 provided that a person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary, a Class C felony. Ind. Code Ann. § 35-43-2-1 (West 2012). Burglary was elevated to a Class A felony if it resulted in bodily injury or serious bodily injury to any person other than the defendant. Ind. Code Ann. § 35-43-2-1(2)(A), (B) (West 2012).

[10] The Indiana Supreme Court has held that walking through an open door does not establish "breaking"; however, breaking is established when even the slightest force is used to gain unauthorized entry, such as opening an unlocked door. *See Cockerham v. State*, 204 N.E.2d 654, 657 (Ind. 1965); *Smith v. State*,

535 N.E.2d 117, 118 (Ind. 1989); *Trice v. State*, 490 N.E.2d 757, 758-59 (Ind. 1986).

[11] The Indiana Supreme Court addressed a similar factual scenario in *Henley v. State*, 519 N.E.2d 525 (Ind. 1988). In that case, the defendant knocked on the front door of the victim's house. When the victim answered the door, the defendant asked for the location of an address about a block away. After being given directions, the defendant asked to use the victim's phone. The victim handed the phone to the defendant through the front door. After making a phone call, the defendant pushed the front door farther open against the victim and entered her house as she tried to close the door. On appeal, the defendant argued that the evidence was insufficient to establish a breaking because he "merely pushed past her through an open door." *Id.* at 526-27. The Supreme Court noted that although the victim opened her door in response to the defendant's knock, she did not intend to allow him to enter her house, as demonstrated by the fact that she handed the telephone to him through the door. *Id.* at 527. Accordingly, the Court found that the evidence was sufficient to prove a breaking because the defendant "used force to push the door farther open to gain entrance." *Id.*

[12] Here, the evidence shows that Alexis was the only person who had permission to enter Mounts' apartment. Although Anderson did not push the door farther open to gain access to the apartment like the defendant in *Henley*, Anderson, Collins, and Jones—who were hiding from view when Jessica opened the door—"rushed" Jessica after she let Alexis in. We find that this constitutes

force used to gain unauthorized entry into Mounts' apartment. Moreover, the action of barging in and jumping on Jessica can be seen as force used to gain unauthorized entry into the apartment. Like the victim in *Henley*, Jessica did not intend to let Anderson in. We therefore find that rushing someone to gain unauthorized entry into a dwelling is sufficient evidence of force.[1] Because the evidence is sufficient to establish the breaking element of burglary, we affirm Anderson's conviction for Class A felony burglary.

Affirmed.

Kirsch, J., and Bradford, J., concur.

---

[1] Because we reach this conclusion, we need not address Anderson's argument that subterfuge is not sufficient to prove the breaking element of burglary.