

FILED

Oct 05 2017, 8:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney
General
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

Marquell M. Jackson,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

October 5, 2017

Court of Appeals Case No.
82A04-1609-CR-2074

Appeal from the Vanderburgh
Circuit Court

The Honorable Kelli E. Fink,
Magistrate

Trial Court Cause No.
82C01-1510-F1-6686

**Najam, Judge.**

## Statement of the Case

[1] Marquell M. Jackson appeals his convictions and sentence, following a jury trial, for burglary, as a Level 1 felony; attempted robbery, as a Level 2 felony; four counts of attempted robbery, as Level 3 felonies; two counts of aggravated

battery, as Level 3 felonies; and for being found to have been a member of a criminal gang, a sentencing enhancement. Jackson raises seven issues for our review, but we address only the following five issues:

1.  Whether the trial court committed fundamental error when it permitted the State to amend the charge for the criminal gang enhancement such that the charge no longer stated a cognizable offense.

2.  Whether two of Jackson's convictions violated Indiana's prohibitions against double jeopardy.

3.  Whether the trial court abused its discretion when it admitted into evidence phone calls Jackson had made from jail.

4.  Whether the trial court committed fundamental error when it instructed the jury on accomplice liability.

5.  Whether the State presented sufficient evidence to support Jackson's conviction for burglary, as a Level 1 felony.

[2] We hold that the trial court committed fundamental error when it permitted the State to amend the charge on the criminal gang enhancement such that the charge no longer stated an offense under Indiana law. We also hold that two of Jackson's convictions violate Indiana's prohibitions against double jeopardy because they were enhanced by the same bodily injury as Jackson's conviction for burglary, as a Level 1 felony. In light of those holdings, we reverse Jackson's criminal gang enhancement and remand with instructions for the trial

court to vacate that enhancement. We also reverse the two of Jackson's convictions that are based on the same bodily injury as his conviction for burglary, as a Level 1 felony, and we remand with instructions for the court to enter judgment of conviction on lesser-included offenses on those counts. And we instruct the court to resentence Jackson in accordance with this opinion.[1] On the remaining issues, we affirm.

## Facts and Procedural History

[3] In October of 2015, Jeremy Herbert lived in a second-floor apartment above the 711 Tavern in Evansville. Herbert's apartment was one of two second-floor apartments above the 711 Tavern; one could access those two apartments from the street by gaining entry through an exterior door that Herbert could remotely open. Herbert also had video surveillance on that door. Once through that door, visitors would go upstairs to a hallway common to both apartments. One apartment had a door off the hallway; Herbert's apartment had a doorframe in which he had hung a sheet to "act as the doorway." Tr. Vol. IV at 153. Logan Orth stayed intermittently at Herbert's apartment and sold marijuana out of the apartment.

[4] On October 25, Jackson and his friend, Diego Thomas, learned that Orth had one-half pound of marijuana in Herbert's apartment. Jackson and Thomas decided that they would go to Herbert's apartment "[t]o rob them" of that

---

[1] In light of our holdings, we do not address Jackson's argument under Indiana Appellate Rule 7(B) or his other arguments under the criminal gang enhancement.

marijuana. *Id.* at 9. However, upon approaching the exterior door, they "saw [the] camera above the door" and abandoned their plan. *Id.*

[5] The next day, Jackson and Thomas again decided to rob Orth at Herbert's apartment. This time, Jackson and Thomas obtained the assistance of Jarvice Sears, Corey Cain, and O'Neill Bruin to help them carry out their plan. The five confederates acquired two firearms and some face masks to use in the commission of the invasion. They agreed to equally split any marijuana and money they seized from Orth.

[6] Shortly before 9:00 p.m., the group approached the exterior door to Herbert's apartment and observed the surveillance camera. They then "debate[d]" among themselves "whether . . . [to] keep on going . . . or just leave." *Id.* at 17. Jackson advocated for continuing forward, and, after about five minutes of discussion, the cohort agreed. Thomas then "pulled the camera out [of] the wall," the five men went through the exterior door,[2] they "pulled back" the sheet to Herbert's apartment, and they entered the apartment. *Id.* at 18-19.

[7] At that time, about ten people, including Orth and Herbert, were inside the apartment "smoking blunts." *Id.* at 156. The five intruders demanded the occupants' marijuana and money. Sears pulled out a firearm. Jackson told the occupants that Sears "ain't playing with you all." *Id.* at 25. Nonetheless, Orth also pulled out a firearm, and a gunfight ensued. Sears shot Orth twice and

---

[2] The exterior door was unlocked at the time.

Orth shot Sears once. The confederates then fled the apartment. On the way out, Cameron Kendall, a resident in the other upstairs apartment, came into the hallway. Sears shot Kendall in the stomach. Kendall, a former sniper for the United States Army, returned fire at the confederates, striking Sears once, Thomas once, and Bruin twice.

[8] Jackson and his cohort made their way outside, but Sears collapsed shortly after and Thomas remained with him until police arrived. The other three eventually drove to a hospital and were arrested thereafter. No one died from the gunfight.

[9] While in prison, Jackson made several phone calls that the State recorded. The State advised Jackson prior to the phone calls that it would record them and that they could be used against him at trial. Undeterred, in one call Jackson stated that "[t]he only thing they could stick on me is that burglary. Now, I can get that dropped down to where I can go to the Safe House and get House Arrest, so I'll plead out to that . . . ." Tr. Vol. III at 108. In another call, Jackson again commented that he could be convicted of burglary. Following several inaudible comments relating to his alleged participation in the events at the apartment, Jackson then stated that "[w]hen everything started happening I ran because I didn't know, I knew but I didn't know, so when I seen what I didn't know, then I ran." *Id.* at 111.

[10] The State charged Jackson with sixteen offenses and a criminal gang enhancement. The State's original charge of the criminal gang enhancement

tracked the language of Indiana Code Section 35-50-2-15(b) (2015) and stated, in relevant part, that, "on October 26, 2015, [Jackson] knowingly or intentionally was a member of a criminal gang while committing the underlying offense." Appellant's App. Vol. II at 56. However, three days before Jackson's trial, the State amended that language to instead allege that Jackson "was a known member of a criminal gang[] while committing the underlying felony offense." *Id.* at 97. Jackson did not object to the State's amendment of the charging information on the criminal gang enhancement.

[11] The trial court ordered Jackson's ensuing jury trial to be bifurcated between the substantive offenses and the criminal gang enhancement. During the first phase, numerous witnesses, including some of his confederates, testified and described the events of October 26, 2015. The State also introduced, over his objections, Jackson's jailhouse phone calls as described above. The jury found Jackson guilty as charged.

[12] Jackson's jury trial then proceeded to the second phase on the criminal gang enhancement allegation. In his introductory remarks to the jury at the start of that proceeding, Jackson's attorney stated:

> I'll keep it straight to the point on this one. The Court's instruction number 2 says that the State has alleged that Mr. Jackson was a known member of a gang while committing the underlying felony offenses and, not or, and Mr. Jackson committed the felony offenses at the direction of or in affiliation with a criminal gang. Number 1 *was a known member*. Number 2, at the direction or an affiliation. *Keep those two factors in mind*

*when you listen to the evidence. I don't think it will be sufficient to*
*convince you beyond a reasonable doubt . . . .*

Tr. Vol. V at 164-65 (emphases added). The State then called Thomas as a
witness, and he redescribed the events of October 26, 2015. In a short cross-
examination, Jackson's attorney questioned Thomas as follows:

> Q    . . . you['d] consider yourself a friend of [Jackson's]
> wouldn't you?
>
> A    Yes.
>
> Q    How long have you all been friends?
>
> A    Five or six years.
>
> Q    Mr. Jackson, he's not a known member of a gang is he?
>
> A    No, he is not.

*Id.* at 178. The State then called Evansville Police Department Detective Keith
Whitler, who investigated the October 26, 2015, incident. He stated that
Jackson and his cohort acted together in the commission of those offenses, but
he did not testify to any prior known gang involvement by Jackson. Finally,
the State called Bruin. Bruin, like Thomas, described the events of October 26,
2015. The totality of Bruin's cross-examination is as follows:

> Q    Mr. Bruin, how long have you been, well are you friends
> with Marquell Jackson?

A     Yes.

Q     How long have you been friends with him?

A     Going on like 7 years.

Q     Do you know Mr. Jackson to be a member of a gang?

A     No.

Q      . . . did he act at your direction?

A     What do you mean by act?

Q     Did you make him do anything?

A     No.

*Id.* at 189.

[13]     The court gave the jury four instructions on the criminal gang enhancement. The court's instruction number two recited the State's charging information, namely, that Jackson "was a known member of a gang while committing the underlying felony offenses . . . ." Appellant's App. Vol. III at 57. However, the court's instruction number three informed the jury that, to find Jackson guilty under the enhancement, the jury had to find that he "knowingly or intentionally was a member of a criminal gang while committing the offense . . . ." *Id.* The jury found Jackson guilty on the enhancement.

Thereafter, the trial court entered its judgment of conviction against Jackson for burglary, as a Level 1 felony; attempted robbery, as a Level 2 felony; four counts of attempted robbery, as Level 3 felonies; two counts of aggravated battery, as Level 3 felonies; and for being a member of a criminal gang. The court ordered Jackson to serve thirty years for burglary, as a Level 1 felony, enhanced by an additional thirty years for being a member of a criminal gang. The court ordered Jackson's other sentences to run concurrent with those sixty years. This appeal ensued.

## Discussion and Decision

### Issue One: The Amended Criminal Gang Enhancement Charge

We first address Jackson's argument on appeal that the trial court committed fundamental error when it permitted the State to amend the criminal gang enhancement allegation. Fundamental error "is a substantial, blatant violation of due process" that "must be so prejudicial to the rights of a defendant as to make a fair trial impossible." *Rosales v. State*, 23 N.E.3d 8, 11 (Ind. 2015) (citations omitted).

The State's original charge of the criminal gang enhancement tracked the statutory language and stated in relevant part that, "on October 26, 2015, [Jackson] knowingly or intentionally was a member of a criminal gang while committing the underlying offense." Appellant's App. Vol. II at 56; *see* I.C. § 35-50-2-15(b)(1). However, nearly seven months later and three days before Jackson's trial, the State amended that language to instead allege that Jackson

"was a known member of a criminal gang[] while committing the underlying felony offense." *Id.* at 97.

[17] The language of the amended charge does not track and is not consistent with the language of the statute. *See* I.C. § 35-50-2-15(b)(1). In particular, the amended charge omits a material element from the statute, namely, the *mens rea*. And the amended charge adds an element that is not within the statute, namely, that Jackson was "a known member" of a criminal gang. Appellant's App. Vol. II at 97.

[18] As a result of those changes, the amended charge is substantially different from the statutory language and carries a wholly different meaning. For example, under the language of the State's amended charge, the State needed only to show that someone[3] believed Jackson to be a member of a criminal gang. But the Indiana Code demands that Jackson *knowingly or intentionally* was a member of a gang. I.C. § 35-50-2-15(b)(1).[4] Thus, it is not enough under the statute that some third parties might have believed Jackson to be a member of a gang; Jackson's membership must have been real and the result of his knowing or intentional conduct. In other words, being a known member of a gang is not equivalent to knowingly or intentionally being a member of a gang. The

---

[3] While Indiana Code Section 35-50-2-15(g) provides a limited description of some evidence the State may use to demonstrate membership in a criminal gang, that statute is not exhaustive.

[4] A person engages in conduct "intentionally" if, when he engages in the conduct, it is his conscious objective to do so. I.C. § 35-41-2-2(a). And a person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so. I.C. § 35-41-2-2(b).

amended charge did not state an allegation under the criminal gang enhancement statute.

[19] The Indiana Supreme Court has long recognized that a "[c]onviction [for] a non-existent crime is fundamental error" and "a nullity." *Moon v. State*, 267 Ind. 27, 366 N.E.2d 1168, 1168-69 (1977). Indeed, as our Supreme Court has made clear, a conviction where "[t]here is no such offense" in the Indiana Code "does not follow any legal authority" and "offends our concepts of criminal justice." *Young v. State*, 249 Ind. 286, 231 N.E.2d 797, 799 (1967). It is the province of our legislature to define crimes and penalties. Ind. Const. art. 4 §§ 22-23. It is not too much to ask the State not to improvise but to charge defendants only with crimes as defined by our legislature.

[20] Further, "it is well-established that due process requires that a defendant be given notice of the crime or crimes with which he is charged so that he can prepare his defense. Absent sufficient notice that a particular offense is charged, a defendant cannot be convicted of that crime." *Thompson v. State*, 761 N.E.2d 467, 470 (Ind. Ct. App. 2002) (quotation marks omitted). Likewise, as Justice Massa wrote for our Supreme Court, it is a fundamental principle that "people have a right to fair warning of the criminal penalties that may result from their conduct." *Tyson v. State*, 51 N.E.3d 88, 92 (Ind. 2016). And the charging information must be sufficiently specific to ensure that the defendant will not twice be put in jeopardy for the same act. *Blackburn v. State*, 260 Ind. 5, 291 N.E.2d 686, 690 (1973).

The State asserts that Jackson's challenge is merely to the sufficiency of the charging information. The Indiana Supreme Court has held that no fundamental error exists when a charge erroneously states the *mens rea* as "knowingly" rather than "intentionally" when specific intent is required. *Burgess v. State*, 461 N.E.2d 1094, 1097-98 (Ind. 1984). Our Supreme Court has also held that, when a charging information erroneously titles the alleged offense using a label for an offense that does not exist, the charging information by itself does not demonstrate reversible error if the substantive allegation in the charge puts the defendant on notice that the State is actually charging an existing offense. *Head v. State*, 443 N.E.2d 44, 51 (Ind. 1982). But the State's amended charge here does not merely misstate the *mens rea* or mistitle the offense.

Rather, while the amended charge here states the correct name for the charge and provides the correct legal citation, as explained above in substance the charge alleges an act that does not constitute a criminal gang enhancement as defined in the Indiana Code. And we have long held that it is typically "the text of the charging information," as opposed to its title, "[t]hat constitutes the offenses with which [a defendant] was charged and convicted." *Funk v. State*, 714 N.E.2d 746, 750 (Ind. Ct. App. 1999), *trans. denied*; *see also Head*, 443 N.E.2d at 51. We have also repeatedly concluded that the complete omission of a material element of an offense, such as the *mens rea*, is fundamental error when that omission fails to give the defendant notice of the elements of the offense and makes him unable to adequately prepare his defense. *E.g.*,

*Thompson*, 761 N.E.2d at 470; *Downey v. State*, 726 N.E.2d 794, 799 (Ind. Ct. App. 2000), *trans. denied*; *Phillips v. State*, 518 N.E.2d 1129, 1131-32 (Ind. Ct. App. 1988); *see also Blackburn*, 291 N.E.2d at 690 (stating that "certain details may be omitted" from the charging information so long as there is "sufficient information to enable [the defendant] to prepare his defense and to assure that he will not twice be put in jeopardy for the same crime"). Here, the substance of the charging information failed to state an offense and completely omitted the *mens rea*. Thus, with its amended charge, the State put Jackson on notice that he was being charged with a nonexistent offense.

[23] Further, the fundamental nature of the erroneously amended charge had a direct impact throughout the trial proceedings that followed. During the second phase of his jury trial, Jackson's counsel repeatedly emphasized in his arguments to the jury and in his cross-examination of the witnesses the part of the amended charge that was added by the State in error—namely, whether Jackson was "a known member" of a gang. Tr. Vol. V at 164-65, 178, 189.[5] In other words, the State's error required Jackson to prepare his defense to attack irrelevant facts rather than relevant facts. Also, two of the trial court's four instructions to the jury at the conclusion of the second phase were incompatible: in instruction two, the court informed the jury of the language of

---

[5] The parties dispute on appeal whether the timing of the amendment enabled Jackson to adequately prepare his defense. But, while the record is clear that Jackson's counsel had a defense to the amended charge prepared, the record is equally clear that that defense was focused almost exclusively on the erroneous language of the amended charge. Insofar as the State suggests on appeal that the original charge properly followed the statutory language and therefore precludes a finding of fundamental error, we reject the State's argument in light of the record on appeal.

the State's erroneously amended charge; in instruction three, the court informed the jury of the proper statutory language, which included the *mens rea* omitted by the State from its amended charge.

[24] Again, "[t]he purpose of an information is to advise the defendant of the particular crime charged so that he can prepare a defense." *McGee v. State*, 495 N.E.2d 537, 538 (Ind. 1986). That purpose cannot be fulfilled where, as our Supreme Court said in *Tyson*, there is no "fair warning" that the conduct complained of by the State in its information is an offense. 51 N.E.3d at 92. That purpose also cannot be fulfilled where, as here, the State at trial presents evidence of an act other than that charged. *E.g.*, *Young v. State*, 30 N.E.3d 719, 726-28 (Ind. 2015).

[25] In addition, the amended charge does not adequately protect Jackson from double jeopardy. It is not clear from the record whether the State punished Jackson for having merely been "a known member" of a gang (as alleged in the amended charge and actually defended against) or for "knowingly or intentionally" being a gang member during the instant offenses (as originally charged and actually tried by the State). Accordingly, the amended charge "did not adequately describe the charge so that [Jackson] could plead this present conviction should he subsequently be charged with" the same act. *Griffin v. State*, 439 N.E.2d 160, 161-62 (Ind. 1982). Thus, the amended charge is inadequate to protect Jackson from double jeopardy.

The amended charge for the criminal gang enhancement is fundamentally erroneous on this record for another reason. Even if it were acceptable for the State to hold someone to trial for a nonexistent offense, Chief Justice Rush has explained for our Supreme Court that it violates a defendant's fundamental right to due process to allow the State to charge an offense on a specified set of facts, have the defendant rely on the language of that charge to prepare his defense, and then allow the State to present evidence of a different offense—including an otherwise inherently included lesser offense—to support the charge. *Young*, 30 N.E.3d at 726-28.

Here, there is no question that the State expressly based its charge on Jackson being "a known member" of a criminal gang. Like the defendant in *Young*, Jackson "frame[d his] defense" solely in terms of that language "to the exclusion of any other" defense. *Id.* Yet, during trial, the State wholly failed to produce any evidence that Jackson was "a known member" of a criminal gang, as Jackson emphasized in his arguments to the jury and in his cross-examination of the witnesses. As our Supreme Court made clear in *Young*, the State cannot engage in such an evidentiary bait-and-switch. *Id.* Thus, even if the State were permitted to charge the criminal gang enhancement as amended, the State did not present evidence to support the allegation that Jackson was "a known member" of a criminal gang, and reversal is required. *Id.*

In sum, the amended charge was a misdirection. The trial court committed fundamental error when it permitted the State to amend the criminal gang enhancement allegation to charge the defendant with being "a known member"

of a criminal gang. In its operation and effect, the amended charge poisoned the well as it skewed the evidence and argument and caused the defendant to be tried for and defend against an offense that does not exist under the statute. We reverse Jackson's enhancement and remand with instructions that the court vacate the enhancement and the sentence imposed on it.

### Issue Two: Double Jeopardy

[29] Jackson also asserts that the trial court violated his right to be free from double jeopardy when it entered its judgment of conviction on burglary, as a Level 1 felony; robbery, as a Level 2 felony (as alleged in Count 3); and aggravated battery, as a Level 3 felony (as alleged in Count 8), because each of those three offenses was enhanced based on the same serious bodily injury to Orth. The State acknowledges that the enhanced robbery and aggravated battery offenses "may violate principles of double jeopardy." Appellee's Br. at 27.

[30] We agree. The Indiana Supreme Court has long recognized that multiple offenses may not be enhanced based on the same bodily injury. *Pierce v. State*, 761 N.E.2d 826, 830 (Ind. 2002). In such circumstances, entry of judgment on the base-level offense for those offenses with the less severe penal consequences is the appropriate remedy. *See Street v. State*, 30 N.E.3d 41, 48-49 (Ind. Ct. App. 2015), *trans. denied*. Accordingly, we reverse Jackson's convictions under Count 3 for robbery, as a Level 2 felony, and under Count 8 for aggravated battery, as a Level 3 felony. We remand to the trial court with instructions that it instead enter judgment of conviction for the lesser-included offenses of, respectively, robbery, as a Level 5 felony, and battery, as a Class B misdemeanor. *See* I.C. §§

35-42-5-1(a) (base-level offense of robbery); 35-42-2-1(c) (base-level offense of battery).

### Issue Three: Admission of Phone Calls

[31]     We next consider Jackson's argument that the trial court abused its discretion when it admitted excerpts from the two phone calls he had made from prison into evidence. The trial court has "inherent discretionary power on the admission of evidence, and its decisions are reviewed only for an abuse of that discretion." *McManus v. State*, 814 N.E.2d 253, 264 (Ind. 2004) (internal quotation marks omitted). An abuse of discretion occurs when the trial court's judgment "is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights." *Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014).

[32]     According to Jackson, the trial court abused its discretion when it admitted those excerpts because they "concerned inadmissible plea negotiations and w[ere] highly misleading and prejudicial." Appellant's Br. at 20. But we agree with the State that, his bald assertions aside, Jackson has made no showing that his statements had any relationship to any plea negotiations. Moreover, Jackson was advised prior to his phone calls that they could be recorded and used against him at trial, and he does not suggest on appeal that his admissions following that advisement were not made voluntarily, knowingly, or intelligently. *See Baer v. State*, 866 N.E.2d 752, 762 (Ind. 2007).

[33]    We also reject Jackson's assertions that the excerpts were irrelevant, misleading, and highly prejudicial. First, Jackson did not preserve for appellate review his argument that the excerpts were irrelevant, *see* Tr. Vol. III at 73, and, as such, we do not consider that argument. Second, the trial court has broad discretion to determine whether the probative value of relevant evidence is substantially outweighed by the danger of unfair prejudice. *Snow v. State*, 77 N.E.3d 173, 177, 179 (Ind. 2017). The unfair prejudice, if any, from Jackson's own admissions "was not so high that it overrode the trial court's wide discretion." *Id.* at 179. Accordingly, the trial court did not abuse its discretion in the admission of the excerpts from the jailhouse phone calls.

### Issue Four: Jury Instruction on Accomplice Liability

[34]    Jackson asserts that the trial court committed fundamental error when it instructed the jury on accomplice liability. As the Indiana Supreme Court has explained:

> As "[t]he manner of instructing a jury lies largely within the discretion of the trial court," this Court reverses a trial court's jury instruction "only for an abuse of discretion." But because [the appellant] did not object to the accomplice liability instruction given by the trial court or tender his own accomplice liability instruction, he waived his right to appeal the instruction provided to the jury. Consequently, we "will only reverse the trial court if the trial court committed error that was fundamental," in instructing the jury on the elements of accomplice liability when attempted murder is charged. Fundamental error "is a substantial, blatant violation of due process" that "must be so prejudicial to the rights of a defendant as to make a fair trial impossible."

*Rosales*, 23 N.E.3d at 11 (citations omitted; first brackets original to *Rosales*).

[35]     The trial court instructed the jury on accomplice liability as follows:

> A person who knowingly or intentionally aids another in committing a crime is guilty of that crime. In order to commit a crime of aiding, a person must have knowledge that he is aiding the commission of the crime. To be guilty, he does not have to personally participate in the crime nor does he have to be present when the crime is committed. Mere presence alone is not sufficient to prove the Defendant aided the crime. Failure to oppose the commission of the crime alone is also insufficient to prove that the Defendant aided the crime. However, presence at the scene of the crime and failure to oppose the crime's commission are factors which may be considered in determining whether there was aiding another to commit the crime. Before you can convict the Defendant as an accessory the State must prove the elements of the crime and that the Defendant knowingly or intentionally aided another to commit the crime beyond a reasonable doubt.

Appellant's App. Vol. III at 31.

[36]     On appeal, Jackson asserts that that instruction was erroneous because it "relieved the State of its burden of proving that Marquell participated in the underlying offenses . . . ." Appellant's Br. at 27. In support of that assertion, Jackson contends that we have previously held a substantially similar instruction "to be erroneous." *Id.* (citing *Hawn v. State*, 565 N.E.2d 362, 366 (Ind. Ct. App. 1991)). But *Hawn* has no such holding. Rather, after quoting the instruction in that case, we stated:

appellant argues that the following sentence was erroneous: "He does not have to personally participate in the crime nor does he have to be present when the crime is committed." Our courts have repeatedly held that an accessory's presence at the scene of the crime is not necessary and that the evidence need not show that the accessory personally participated in the commission of each element of the crime. *Johnson v. State* (1981), Ind. App., 423 N.E.2d 623, 627. Although the State's instruction does not qualify the participation language, any error was harmless due to the strong evidence of appellant's guilt. *Hurt v. State* (1990), Ind. App., 553 N.E.2d 1243, 1249.

*Hawn*, 565 N.E.2d at 366. At best, that language says that the instruction could have been more clear. But it does not say that the instruction was erroneous, and it certainly does not suggest that any such error necessarily rises to the level of fundamental error. Indeed, our case law is clear that instructions substantially similar to Jackson's are adequate instructions. *E.g.*, *Boney v. State*, 880 N.E.2d 279, 293-94 (Ind. Ct. App. 2008), *trans. denied*. We reject Jackson's challenge to the accomplice liability instruction.[6]

### Issue Five: Sufficient Evidence of Burglary

[37] Last, Jackson asserts that the State failed to present sufficient evidence to support his conviction for burglary, as a Level 1 felony. Our standard of review is clear: in reviewing such claims, we will consider only the evidence most favorable to the verdict and the reasonable inferences to be drawn therefrom.

---

[6] Jackson's citations to *Fowler v. State*, 900 N.E.2d 770, 774 (Ind. Ct. App. 2009), and *Peterson v. State*, 699 N.E.2d 701, 706 (Ind. Ct. App. 1998), are not supported by cogent argument, and we do not consider them. *See* Ind. Appellate Rule 46(A)(8)(a).

*Leonard v. State*, 73 N.E.3d 155, 160 (Ind. 2017). We will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.* We will neither reweigh the evidence nor reassess the credibility of witnesses. *Id.*

[38] To show that Jackson committed burglary, as a Level 1 felony, the State was required to prove beyond a reasonable doubt that Jackson broke and entered the building or structure of another person with the intent to commit a felony therein, and that Jackson's act resulted in serious bodily injury to another. I.C. § 35-43-2-1. On appeal, Jackson asserts only that the State failed to present sufficient evidence that he broke into Herbert's apartment.

[39] "[I]n Indiana, a 'breaking' is proved by showing that even the slightest force was used to gain unauthorized entry." *State v. Hancock*, 65 N.E.3d 585, 591 (Ind. 2016) (quotation marks omitted). Here, a member of Jackson's cohort moved the sheet that Herbert had hung in his doorway, and which acted as a door to his apartment, in order to gain unauthorized entry into Herbert's apartment. That, as a matter of law, is sufficient to show a "breaking" for purposes of the burglary statute. *See id.*; *see also Meehan v. State*, 7 N.E.3d 255, 258-59 (Ind. 2014).

[40] Still, Jackson contends that moving a sheet hung in a doorway is not sufficient because a sheet is not a "structural impediment." Appellant's Br. at 33 (citing *Creasy v. State*, 518 N.E.2d 785, 786 (Ind. 1988)). But we do not read *Creasy* to demand something more substantial than Herbert's sheet. Indeed, in *Hancock*,

the Indiana Supreme Court cited with approval an opinion of this court in which we had held that "rush[ing] past a victim to gain entry" sufficed to show a breaking. 65 N.E.3d at 591 (citing *Anderson v. State*, 37 N.E.3d 972, 974-75 (Ind. Ct. App. 2015)). Our Supreme Court also stated that "it is not necessary to show forcible entry, only that some physical act was used to gain entry." *Id.* (quoting *McCormick v. State*, 178 Ind. App. 206, 382 N.E.3d 172, 174 (1978)). Moving the sheet was a physical act used to gain entry. Accordingly, the State presented sufficient evidence to show that Jackson broke into Herbert's apartment when a member of Jackson's cohort physically moved the sheet in Herbert's doorway to gain entry.

## *Conclusion*

In sum, we reverse Jackson's criminal gang enhancement and his convictions under Count 3 and Count 8. We remand with instructions that the trial court vacate the criminal gang enhancement and enter judgment of conviction under Count 3 for robbery, as a Level 5 felony, and under Count 8 for battery, as a Class B misdemeanor. We also instruct the trial court to resentence Jackson in accordance with this opinion. On all other issues, we affirm.

Affirmed in part, reversed in part, and remanded with instructions.

Kirsch, J., and Brown, J., concur.