


FILED

Aug 07 2024, 9:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Timothy J. Brewer,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

August 7, 2024

Court of Appeals Case No.
24A-CR-105

Appeal from the Morgan Superior Court

The Honorable Sara A. Dungan, Judge

Trial Court Cause No.
55D03-2305-F2-777

---

**Opinion by Judge Brown**
Judges May and Pyle concur.

**Brown, Judge.**

[1] Timothy J. Brewer claims that his conviction for theft as a level 5 felony and one of his convictions for intimidation as a level 5 felony constitute double jeopardy violations and that the evidence is insufficient to sustain his conviction for burglary as a level 2 felony. The State asserts that the trial court's merger of his burglary and attempted burglary convictions did not remedy a double jeopardy violation and that the abstract of judgment contains a scrivener's error. We affirm in part, reverse in part, and remand.

## Facts and Procedural History

[2] Levi Garrett and Teresa Hayden lived in a camper parked next to the house of Levi's mother, Leona, in Mooresville. R.G., Levi's eleven-year-old daughter, lived in Leona's house with Leona, her husband, and her other grandchildren. In March 2023, Brewer worked on Leona's property cutting trees and cleaning up brush. Around May 1, Levi confronted Brewer regarding copper which was missing from the property, and Brewer was told to leave and not return.

[3] On the morning of May 10, 2023, Brewer approached the camper on Leona's property and attempted to pry open the camper door. Hayden woke up to "the door being banged on, or pulled on." Transcript Volume III at 86. She heard "it's me, open up." *Id*. at 88. Hayden "pulled the lever," and then Brewer "backed [her] in back into the camper with a gun pointed at [her]." *Id*. Brewer struck Hayden in her head "with the butt of the gun when he first came in." *Id*. Brewer "asked [her] where Levi was," "kept telling [her] that Levi ruined his

life," and "was upset that Levi ended their friendship and accused him of stealing." *Id*. He told Hayden to open the safe in the camper, and she refused. Sometime thereafter, R.G. approached the camper, walked up the steps to the camper door, and saw that the door was not completely closed. Brewer grabbed R.G.'s arm and pulled her inside the camper, and she saw the gun and crow bar in his hands. R.G. moved behind Hayden. Hayden "kept telling [Brewer] to let R.G. out," "he wouldn't," and he "kept telling [Hayden] to open the safe." *Id*. at 90. Hayden told Brewer that she was "not doing anything until he let [R.G.] out of here," R.G. was "crying hysterically and begging [Hayden] to open the safe," Hayden "refused for a while," and Brewer punched her in the face. *Id*. Brewer looked at R.G. and said "I love you to death, I won't hurt you, . . . but I will put a bullet in [Hayden's] brain." *Id*. R.G. begged Hayden to open the safe, and Hayden opened it.

[4] Brewer took a .38 caliber Taurus, cash, watches, jewelry, coins, a phone, an Apple watch, and ammunition from the safe. He also took two pairs of Nike shoes. Brewer exited the camper, R.G. ran in the house and told Leona what happened, and Leona called the police. The police observed "lots of pry marks, lots of bending of the aluminum that was in the structure of the camper on the door." *Id*. at 238. Police also obtained video recordings taken from security cameras showing the outside and inside of the camper.

[5] The State charged Brewer as amended with Count 1, burglary as a level 2 felony; Count 2, attempted burglary as a level 2 felony; Count 3, criminal confinement as a level 3 felony; Count 4, criminal confinement as a level 3

felony; Count 5, armed robbery as a level 3 felony; Count 6, battery by means of a deadly weapon as a level 5 felony; Count 7, theft as a level 5 felony; Count 8, theft as a level 5 felony; Count 9, intimidation of Hayden as a level 5 felony; Count 10, intimidation of R.G. as a level 5 felony; and Count 11, battery on a person less than fourteen years old as a level 6 felony. The State alleged Brewer was an habitual offender. A jury found Brewer guilty on all counts except for Count 8, and Brewer admitted to being an habitual offender. The trial court merged Counts 1 and 2 and sentenced Brewer to thirty years on Count 1 and enhanced the sentence by twenty years for the habitual offender determination, nine years on Counts 3 and 5, six years on Count 4, three years on Counts 6, 7, 9, and 10, and two years on Count 11.[1] The court ordered that the sentence for Count 4 be served consecutive to the sentence for Count 1 and that the sentences on the other counts be served concurrently, resulting in an aggregate sentence of fifty-six years.

---

[1] The jury found Brewer guilty of armed robbery on Count 5. At sentencing, the court commented: "State did file a sentencing memo today with regards to I think what you anticipate your arguments being . . . [i]n terms of time, potentially lesser includeds, based on your thoughts of how double jeopardy may work." Transcript Volume IV at 118. In its "Judgment and Order Re: Sentencing" for Count 5, the trial court stated that it entered judgment of conviction for "Armed Robbery (L5) (Lesser included)." Appellant's Appendix Volume II at 207. However, the court imposed a sentence of nine years on Count 5. Similarly, the court's abstract of judgment indicates, for Count 5, "F5" and "Finding of Guilty Lesser Included," but shows a sentence of nine years. *Id*. at 213. Ind. Code § 35-50-2-6 provides that a person who commits a level 5 felony shall be imprisoned for a fixed term of between one and six years with the advisory sentence being three years. We instruct the trial court, on remand, to enter a sentence on Count 5 within the appropriate sentencing range and to amend its orders and abstract of judgment accordingly. Also, in its "Judgment and Order Re: Sentencing" for Count 4, the court stated it entered the conviction for criminal confinement as a level 5 felony, *id*. at 206, but the abstract of judgment indicates it was entered as a level 3 felony; we instruct the court to correct the abstract of judgment to reflect that the conviction on Count 4 was entered as a level 5 felony.

**Discussion**

**I.**

Brewer asserts two double jeopardy violations and cites Article 1, Section 14 of the Indiana Constitution. The Indiana Supreme Court has held that "our Double Jeopardy Clause should focus its protective scope exclusively on successive prosecutions for the 'same offense'" and that this conclusion "does not suggest that defendants enjoy no protection from multiple punishments in a single proceeding; it does, however, shift our analysis to other sources of protection—statutory, common law, and constitutional." *Wadle v. State*, 151 N.E.3d 227, 246 (Ind. 2020). In *Wadle*, the Indiana Supreme Court established a three-part test which applies "when a single criminal act or transaction violates multiple statutes with common elements and harms one or more victims." 151 N.E.3d at 247. In *A.W. v. State*, the Court applied the steps in *Wadle*, "while adding a modification at Step 2." 229 N.E.3d 1060, 1066 (Ind. 2024). Under the first step, the court examines the statutory language of the offenses. *Id.* "If the language of either statute clearly permits multiple punishment, either expressly or by unmistakable implication, the court's inquiry comes to an end and there is no violation of substantive double jeopardy." *Id.* (quoting *Wadle*, 151 N.E.3d at 248).

If the statutory language does not clearly permit multiple punishments, a court then moves to Step 2 and applies "our included-offense statutes to determine statutory intent." *Id.* (citations omitted). "Included offense" means an offense that:

(1)    is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged;

(2)    consists of an attempt to commit the offense charged or an offense otherwise included therein; or

(3)    differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission.

Ind. Code § 35-31.5-2-168. "'If neither offense is an included offense of the other (either inherently or as charged), there is no violation of double jeopardy' and the analysis ends—full stop." *A.W.*, 229 N.E.3d at 1067 (quoting *Wadle*, 151 N.E.3d at 248).

[8]    With respect to the key phrases "inherently" and "as charged," the Court clarified that the evaluation of an "inherently included" offense is to be made under all three subsections of Ind. Code § 35-31.5-2-168 and the concepts of "as charged" and "factually included" should be treated as synonymous under *Wadle*. *Id*. The Court concluded that, "when assessing whether an offense is factually included, a court may examine only the facts as presented on the face of the charging instrument." *Id.* "This includes examining the 'means used to commit the crime charged,' which must 'include all of the elements of the alleged lesser included offense.'" *Id*. (quoting *Wadle,* 151 N.E.3d at 251 n.30). "Step 2 has core constraints: it does not authorize courts to probe other facts, such as evidence adduced from trial." *Id*. "The factually included inquiry at this step is thus limited to facts on the face of the charging instrument." *Id.*

"[C]ourts must confine their Step 2 analysis to (1) the included-offense statute (whether the offenses are 'inherently' included), and (2) the face of the charging instrument (whether the offenses 'as charged' are factually included)." *Id.* at 1068. To avoid double jeopardy outcomes turning solely on the facts the prosecutor elects to include or exclude in the charging instrument, the Court in *A.W.* held that "where ambiguities exist in a charging instrument about whether one offense is factually included in another, courts must construe those ambiguities in the defendant's favor, and thus find a presumptive double jeopardy violation at Step 2." *Id*. at 1069 (citation omitted). "In this event, the State can later rebut this presumption at Step 3." *Id*.

[9] In the third step, "[i]f a court has found that one offense is included in the other—either inherently or as charged—the court must then (and only then) 'examine the facts underlying those offenses, as presented in the charging instrument and as adduced at trial.'" *Id.* at 1071 (quoting *Wadle*, 151 N.E.3d at 249). "[A]t this final step, a court may only then probe the underlying facts—as presented in the charging instrument and adduced at trial—to determine whether a defendant's actions were 'so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction.'" *Id*. "If the underlying facts reveal the two offenses are indeed 'separate,' there is no *Wadle* violation, 'even if one offense is, by definition, 'included' in the other.'" *Id.* (quoting *Wadle*, 151 N.E.3d at 249). "That said, if the 'facts show only a single continuous crime, and one statutory offense is included in the other, then the prosecutor may charge these offenses only as

alternative (rather than cumulative) sanctions.'" *Id*. (quoting *Wadle*, 151 N.E.3d at 249).

## A. *Theft*

[10] Brewer argues that his convictions on both Count 5, robbery, and Count 7, theft, constitute a double jeopardy violation. The State concedes that, because theft is an inherently included offense of robbery and because Brewer was convicted of robbery and theft for the same item, his conviction for theft should be vacated. Applying the *Wadle* analysis, we agree and reverse and remand with instructions to vacate Brewer's conviction for theft in Count 7.[2]

## B. *Intimidation*

[11] Brewer also asserts that his convictions on Count 5, robbery, and Count 9, intimidation of Hayden, constitute a double jeopardy violation. The State notes that the robbery and intimidation statutes do not clearly permit multiple punishments and "acknowledges that the charging information for robbery and intimidation are ambiguous" and "[i]t is not clear from the charging instrument that threat of force to effectuate the robbery was different from the threat Brewer communicated to intimidate Hayden." Appellee's Brief at 13-14. It maintains, however, that "[o]n the final step of *Wadle*, Brewer's actions can be distinguished," "Brewer's implicit threat of force by entering Hayden's camper armed with a gun and striking her was used to establish that Hayden [sic]

---

[2] Vacating the conviction on Count 7 will not impact Brewer's aggregate sentence.

committed robbery," and "he went further and explicitly threatened Hayden by saying that he would 'put a bullet in her brain.'" *Id*. at 14-15 (citing Transcript Volume III 90).

[12] In the first step of *Wadle*, we observe that the statutes governing robbery and intimidation do not clearly permit multiple punishments.[3] Thus, we move to the second step of *Wadle*. The charging information alleged:

> Count 5:
>
> [O]n or about May 10, 2023 . . . Brewer did knowingly or intentionally take property, US Currency, .44 caliber revolver, a brown holster for the .44 caliber revolver, a .38 caliber revolver, an Apple Watch, two (2) Invicta Watches, two (2) Nike Shoe boxes with shoes inside, an iPhone 13 Pro Max with a white case and/or unspecified cell phone from the presence of [Hayden], by using or threatening the use of force against [Hayden] while [Brewer] was armed with a deadly weapon, to-wit: a silver in color pistol.
>
> * * * * *
>
> Count 9:
>
> [On] or about May 10, 2023 in Morgan County, State of Indiana, Timothy J. Brewer did communicate a threat to Teresa Hayden, another person, while drawing or using a deadly weapon, with the

---

[3] Ind. Code § 35-42-5-1 provides in part that "a person who knowingly or intentionally takes property from another person or from the presence of another person: (1) by using or threatening the use of force on any person; or (2) by putting any person in fear; commits robbery, a Level 5 felony," and the offense is a level 3 felony if it is committed while armed with a deadly weapon. Ind. Code § 35-45-2-1 provides that a person who communicates a threat with the intent that another person engage in conduct against the other person's will commits intimidation, a class A misdemeanor, and that the offense is a level 5 felony if, while committing it, the person draws or uses a deadly weapon.

intent that Teresa Hayden engage in conduct against her will by forcing Teresa Hayden to open her safe at gunpoint.

Appellant's Appendix Volume II at 70-71.

[13] We cannot say that the offense of robbery or intimidation is an included offense of the other for purposes of Ind. Code § 35-31.5-2-168—robbery involves taking property from another person or the presence of another person and intimidation involves communicating a threat with the intent that another person engage in conduct against the other person's will. Further, in examining "the facts as presented on the face of the charging instrument," *A.W.*, 229 N.E.3d at 1067, the charge for intimidation alleged that Brewer communicated a threat to Hayden while drawing or using a deadly weapon with the intent that she open the safe, and the charge for robbery alleged that he took property from her presence by using or threatening the use of force.[4] Because neither offense is an included offense of the other, either inherently or as charged, there is no violation of double jeopardy, and our analysis ends. *See id*. We need not move to step 3 of the *Wadle* analysis.

[14] We note that, even if some ambiguity existed in the charging instrument about whether one offense was factually included in the other as the State suggests, and we were to move to step 3, we would nevertheless find no double jeopardy violation. In the third step, we examine the facts underlying the offenses as

---

[4] As already noted, the trial court entered judgment of conviction on Count 5 as a level 5 felony.

presented in the charging instrument and as adduced at trial to determine whether Brewer's actions were so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction. *See A.W.*, 229 N.E.3d at 1071. If the underlying facts reveal the two offenses are indeed separate, there is no *Wadle* violation. *Id.* Brewer first used or threatened the use of force against Hayden when he "backed [her] . . . into the camper with a gun pointed at [her]." Transcript Volume III at 88. He demanded that Hayden open the safe, and she refused. After several minutes, he pulled R.G. inside. After Hayden refused to open the safe "for a while," he punched her in her face. *Id.* at 90. Brewer had the gun in his hand, waved it around, and pointed it at Hayden throughout the encounter. At one point, Brewer made a verbal threat to harm Hayden. Specifically, when asked, "[p]rior to opening the safe, did you hear [Brewer] make any verbal threats to harm you," Hayden testified: "Yeah. [H]e looked at R.G. and told her that he wouldn't hurt her, that he loved her. He said I love you to death, I won't hurt you, he said but I will put a bullet in her brain, talking about me. Because I wouldn't open the safe." *Id.* The security video depicts the protracted encounter from the time Brewer entered the camper until he exited and shows him strike and push Hayden, pull R.G. into the camper, and wave a gun around and point it at Hayden. Brewer's acts supporting his robbery offense and his acts supporting his intimidation offense did not constitute a single transaction. We find no double jeopardy violation.

II.

[15] Brewer further argues the evidence is insufficient to support his burglary conviction. He contends "there is no dispute that [Hayden] opened the door . . . which allowed Brewer entry to the camper" and "[t]here is no allegation that he forced his way in." Appellant's Brief at 14. When reviewing claims of insufficiency, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind. 1995), *reh'g denied*. We look to the evidence and the reasonable inferences therefrom that support the verdict. *Id*. We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Id*.

[16] Ind. Code § 35-43-2-1 provides that a person "who breaks and enters the building or structure of another person, with intent to commit a felony or theft in it, commits burglary" and that the offense is a level 2 felony if it is committed while armed with a deadly weapon.

> "Using even the slightest force to gain unauthorized entry satisfies the breaking element of the crime." *Davis v. State,* 770 N.E.2d 319, 322 (Ind. 2002), *reh'g denied*. "For example, opening an unlocked door or pushing a door that is slightly ajar constitutes a breaking." *Id.* Walking through an open structure does not constitute "breaking" within the definition of the statute. *Cockerham v. State,* 246 Ind. 303, 204 N.E.2d 654, 657 (Ind. 1965), *reh'g denied*. While our Indiana Supreme Court has held "[s]ome physical movement of a structural impediment is necessary to support a finding of breaking," *Smith v. State*, 535 N.E.2d 117, 118 (Ind. 1989), it has also held the use of physical force against a victim to gain entry into a residence was sufficient to prove the element of "breaking" independent of "conclusive" evidence force was used to open the

residence's door. *Bellmore v. State*, 602 N.E.2d 111, 124-125 (Ind. 1992), *reh'g denied.* The element of "breaking" can also be accomplished by forcing a person to open the door to a residence. *Dew v. State*, 439 N.E.2d 624, 625 (Ind. 1982).

*Jenkins v. State*, 34 N.E.3d 258, 261-262 (Ind. Ct. App. 2015), *trans denied*.

[17] The State presented evidence that Brewer approached the door to the camper and attempted to pry open the door, causing extensive damage to the door. Hayden testified "I was woke up by the shaking of the door, and I heard, it's me, open up," "it sounded like my nephew," "I got up and went to the door," and "I just opened . . . . I just pulled the lever. And then [Brewer] backed me in back into the camper with a gun pointed at me." Transcript Volume III at 88. When asked "so the jury knows, you didn't voluntarily let him in," Hayden replied "[n]o," and when asked "[d]id he forcibly," she answered "[y]es." *Id*. When asked, "as he entered the residence with a gun in his hand, did he strike you in any way, or push you," she testified "[y]es, he hit me with the butt of the gun when he first came in, hit my head." *Id*. The security video recordings depict Brewer's actions consistent with Hayden's testimony.

[18] Based upon the record, we conclude that evidence of probative value was presented from which the jury could find that Brewer committed burglary as a level 2 felony. *See Jenkins*, 34 N.E.3d at 262 ("Blackmon opened the door to his apartment after seeing Holmes through the peephole. However, as soon as the door opened, Jenkins and another man pushed Holmes to the side, hit Blackmon with a bottle and a pistol, and proceeded to steal items from

Blackmon's apartment.  While there was no conclusive evidence Jenkins used force *to open the door,* there existed sufficient evidence to prove he used physical force to move Holmes from the doorway and to subdue Blackmon."); *Anderson v. State*, 37 N.E.3d 972, 974-975 (Ind. Ct. App. 2015) ("Anderson, Collins, and Jones—who were hiding from view when Jessica opened the door—'rushed' Jessica after she let Alexis in.  We find that this constitutes force used to gain unauthorized entry into Mounts' apartment.  Moreover, the action of barging in and jumping on Jessica can be seen as force used to gain unauthorized entry into the apartment. . . .  We therefore find that rushing someone to gain unauthorized entry into a dwelling is sufficient evidence of force."), *trans denied*.

## III.

[19]   The State asserts the trial court merged Counts 1 and 2, "that does not remedy a double jeopardy violation," and this Court "should remand to the trial court for the court to vacate Brewer's conviction for attempted burglary."  Appellee's Brief at 16 n.5, 13 n.3, (citing *Hines v. State*, 30 N.E.3d 1216, 1221 (Ind. 2015) (double jeopardy violation not remedied by merger after conviction has been entered)).  We instruct the trial court on remand to vacate the conviction on Count 2 and amend its sentencing statement, abstract of judgment, and judgment and order on Counts 1 and 2 accordingly.  The State also asserts the abstract of judgment contains a scrivener's error as it incorrectly states that Brewer's sentence on Count 1 was ten years.  The court stated verbally at the sentencing hearing, and in its written sentencing statement, that it sentenced Brewer to thirty years on Count 1 and enhanced the sentence by twenty years

for the habitual offender determination. We instruct the court to correct the abstract of judgment on remand. Also, as mentioned above, we instruct the trial court to enter a sentence on Count 5 within the range provided in Ind. Code § 35-50-2-6 and to amend its orders and abstract of judgment accordingly.

[20] For the foregoing reasons, we reverse with instructions to vacate Brewer's conviction for theft under Count 7 and issue an amended sentencing statement, sentencing order, and abstract of judgment consistent with this opinion, and we affirm Brewer's other convictions.

[21] Affirmed in part, reversed in part, and remanded.

May, J., and Pyle, J., concur.

ATTORNEY FOR APPELLANT

Alexander W. Robbins
Robbins Law LLC
Martinsville, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Caroline G. Templeton
Supervising Deputy Attorney General
Indianapolis, Indiana